ROBINSON _v._ LEATHERBEE TIE AND LUMBER COMPANY.

120   901
o129   143

CANDLER, J.   1. A merchant who, by means of circulars and advertisements, solicits generally the shipment to him of goods at a stated price is under an implied contract to pay that price to one who, acting upon such solicitation, ships goods to him which are accepted; and the shipper may recover, at least upon a quantum valebat, for the goods proved to have been shipped and received in accordance with the circulars so sent out.

2. Under the circumstances detailed in the foregoing headnote, the plaintiff, according to the evidence in his behalf, shipped the defendant a quantity of cross-ties.    The defendant mailed him a statement showing that some of the ties had been accepted at different prices and upon a basis of different grading, and that others had been rejected, and at the same time sent him a check for the amount shown by the statement to be due. The ties rejected

were not returned to the plaintiff. The plaintiff deposited the check to his account in bank, but immediately denied the correctness of the statement, and claimed an additional amount as a balance due on the account. *Held* : (*a*) The check being only for the amount admitted to be due the plaintiff by the defendant, the acceptance and retention of the same by the plaintiff was not an admission of the correctness of the statement of the account made by the defendant, and did not prevent the plaintiff from recovering the balance claimed by him to be due. (*b*) The evidence for the plaintiff made out a case which, in the absence of any evidence for the defendant, entitled the plaintiff to a judgment in his favor ; and it was error to grant a non-suit. *Judgment reversed. All the Justices concur.*

Submitted July 14, — Decided August 11, 1904

Complaint. Before Judge Sparks. City court of Brunswick. November 12, 1903.

The suit was for $122.91, alleged to be a balance due on a certain shipment of cross-ties. The petition alleged, that the defendant company bought the ties from the plaintiff " at a certain price per tie;" that the number sold and delivered was 1227, the measurements and prices of which were as follows: 947 ties, 7x9x8, at 42 cents per tie; 280 ties, 6x9x8, at 40 cents per tie ; making the total price $499.74, from which should be deducted the freight, $115.50, and a payment of $261.33; that " by reason of the shipment, delivery, and acceptance of said ties, and under the price agreed upon, and the value of said ties, together with the number and measurements of said ties at the value thereat," the defendant became indebted to the plaintiff in the sum set out; also that " the price charged was the correct, ordinary, and reasonable market price of said ties." The defendant in its answer denied that it had received 1227 ties, and denied that it had agreed to pay the prices alleged. It averred that there were only 1102 ties·in the shipment, and that it had paid the plaintiff for them, at the full market price. At the trial the plaintiff testified: " The amount sued for is due and unpaid. . . The Leatherbee Tie and Lumber Company were continually sending me their circulars and price-list, and I decided to ship them some ties, and they sent check for the amount as shown by same, and I was not satisfied, and went to see them at once. They claimed that so many of the ties were culls and rejects, and refused to pay me any more. I demanded my culls and rejects, and they could not produce or show them, and I entered suit for the balance. I am entirely familiar with the amount of ties sent by me to them. . .

They were sent from Greggs, Ga., to them at Brunswick, Ga. . . The amount of ties was 1227. . . I had an agreement with the South Georgia Road to pay lumber rates on my ties, . . and to run lumber weight would show less ties than were shipped or loaded, and by this weight the defendants wanted to settle with me. Ties do not sell by weight, and for that reason. I billed them to defendants as they actually were loaded. They were first-class ties and in good condition. . . There were no culls or rejects, but all were first-class ties. The highest market price for ties at that time was 40 and 42 cents. . . The defendants have paid me $261.33 on the account by check, and wanted me to accept this amount in full, and I went to see them on the first train, and demanded my ties, and they claimed a great part of them to be culls and rejects, and I demanded them, but they could not produce them, and I told them I would sue them for the balance, and I did so. I know nothing more about the matter than is stated here. I did not make any contract with the defendants to sell them these cross-ties. They were doing a cross-tie business, and on several occasions mailed me circulars and price-lists, which was the cause of my shipping these ties. I shipped the ties without any contract; there was none any more than they solicited me to ship them by sending me circulars and prices of ties, and I took them to be honest and shipped to them, and they kept my ties and have failed to pay me in full for them. It is not true that I received the check in full settlement of the account. I received the check, placed it in bank, and caught the first train to Brunswick, called immediately on the defendants and demanded my money or my ties, and they refused to do either. It is true that the indorsement on the check is in my own handwriting. It is not true that I received this check in full payment of the ties or cashed it, and it is not true that I waited until after I had done so before I made any question about the inspection of the ties, but I received a statement from the defendants, along with the check. . . I demanded payment in full, or my ties, and they refused to pay me any more, and told me the ties were loaded on a boat. I then demanded my culls or rejects. They then told me they were on the wharf. Their inspector went with me to point out the culls and rejects, and he could not find but one. . . I received a report equal to the amount of the check, but not a full

report of the amount shipped." The plaintiff introduced in evidence the check referred to, which was indorsed by him and marked paid; also the statement sent by the defendant with the check. This statement accounted for 1102 ties,—in which were included 6 "rejections" and 115 "culls,"—and at prices (except for the "rejections") ranging from 8 cents to 40 cents per tie, according to different classifications; the whole amounting to $376.83, from which was deducted freight, $115.50, leaving the amount of the check,—$261.33. Employees of the plaintiff testified, that 1227 ties were loaded on cars and shipped by him to the defendant; that they were of the sizes stated in the petition; that there were no culls or rejections; and that they were in first class condition, and "reasonably worth the highest market price,"—"worth as much as any ties could be worth." The court, at the conclusion of this evidence, granted a nonsuit. The plaintiff excepted.

*Ernest Dart*, for plaintiff.
*Atkinson & Dunwody*, for defendant.