## 38937. THOMAS v. DICKSON.

BELL, Justice.

We granted certiorari in this case to consider whether a suit brought by a one-third minority shareholder in a closely held corporation against the majority shareholders was properly maintainable as a derivative or direct action. *Thomas v. Dickson,* 162 Ga. App. 569 (1) (291 SE2d 747) (1982).

In *Thomas,* three men, Dickson, Thomas, and Akin formed Trio Sales, Inc. They each paid $1,000 for 1,000 shares of stock and each loaned the corporation $9,000 in return for a promissory note. All three served as officers of the corporation, and they agreed to receive $1,000 a month as a minimal salary and to distribute profits equally as additional compensation. The amount of these "bonuses" was agreed upon by the three men. By corporate by-law, the decision of whether to distribute any profits as dividends was left to the discretion of the officers of the corporation.

In March of 1977, Dickson died. No dividends were paid prior to his death; instead, profits were paid out as bonuses to the three shareholder-officers. There was no buy-sell agreement for Dickson's stock, whose book value was estimated to be between $8,000-$12,000 by Trio's accountant. To settle its perceived obligations to Mrs. Dickson and to acquire this stock, Trio paid Mr. Dickson's salary through April 15, 1977, paid the $9,000 loan, and approved a $5,000 "death benefit" for Mrs. Dickson in exchange for her selling her husband's stock to Akin and Thomas for $1,000. Believing the stock

to be worth much more, Mrs. Dickson refused to sell. The $5,000 "death benefit" was not paid. The stock is now part of Mr. Dickson's estate, the assets of which will pass to Mrs. Dickson.

After Mr. Dickson's death, Thomas and Akin made the business decisions of the corporation. They continued the practice of paying excess profits as "bonuses" or "additional compensation" to themselves as officers. In 1979, Akin sold his stock to Thomas for $14,000. Subsequently, Thomas ran the corporation and decided how much profit would be paid as "bonuses." During this time, Trio never declared a dividend, and Dickson's estate did not receive any part of the distribution of profits.

In August of 1979, Mrs. Dickson, individually and as executrix of her husband's estate, brought an action against Akin, Thomas, and Trio on the following counts: 1) that since her husband's death, Akin and Thomas have conspired to keep all profits of the corporation to themselves and to deprive Dickson's estate of its rightful one-third share of the profits of the corporation by paying the profits to themselves as salary increases; 2) that these "bonuses" or increases were actually dividends, one-third of which the estate was entitled to receive; 3) that Trio had not paid the $5,000 death benefit to her; and 4) that financial information necessary to evaluate the $1,000 offer to purchase her husband's stock was wrongfully withheld from her by Thomas and Akin; that they reduced the book value of her stock by paying out profits as "bonuses" in order to force her to sell her husband's stock for less than its fair value; and that, therefore, she was entitled to $100,000 in punitive damages and to reasonable attorney's fees from Thomas and Akin. Count 5 was a shareholder derivative action brought on behalf of Trio Sales.

Akin and Thomas filed a motion to dismiss counts 1, 2, and 4, contending that Mrs. Dickson could only bring a shareholder derivative suit on behalf of the corporation, and not a direct action. The trial court denied this motion, and the Court of Appeals denied an interlocutory appeal. The case proceeded to trial, and the jury returned a verdict for Mrs. Dickson on counts 1, 2, and 4.

Thomas appealed the jury's verdict to the Court of Appeals. Akin did not. Thomas contended that the trial court erred in denying his motions to dismiss, for a directed verdict, and for a judgment notwithstanding the verdict as to counts 1, 2, and 4. The Court of Appeals affirmed, holding that though generally Mrs. Dickson should have brought this action as a shareholder derivative suit, she could properly maintain a direct action in this case, since to allow the corporation to recover would benefit the majority shareholder-wrongdoer, Thomas.

We must now consider whether Mrs. Dickson was properly

allowed to maintain a direct action against Thomas and Akin. We reach the conclusion that she was properly allowed to do so.

The general rule is that a shareholder seeking to recover misappropriated corporate funds may only bring a derivative suit. OCGA §§ 14-2-153, 14-2-123 (Code Ann. §§ 22-714, 22-614, 22-615); *Pickett v. Paine,* 230 Ga. 786 (199 SE2d 223) (1973).[1] Because of this general rule, Mrs. Dickson generally would have been forced to combine in one lawsuit a derivative claim to recover over-compensation for the corporation and a direct claim against the corporation and its officers seeking a declaration of dividends in order to receive the recovery to which she felt she was entitled. However, exceptions to this rule have been recognized, including an exception which looks to the reasons requiring derivative actions to determine if they are applicable. Comments, Corporations — Shareholders' Derivative and Direct Actions — Individual Recovery, 35 N. C. L. Rev. 279 (1957); Watson v. Button, 235 F2d 235 (9th Cir. 1956); cf. Kaplan's Nadler, Georgia Corporation Law, § 11-16 (1971).

Although Georgia follows the general rule, we believe that in exceptional situations this Court and our other state courts should look at the "realistic objectives" of a given case to determine if a direct action is proper. See, Kaplan's Nadler, supra, § 11-16.

In the instant case, the reasons requiring derivative suits do not exist. The reasons underlying the general rule are that 1) it prevents a multiplicity of lawsuits by shareholders; 2) it protects corporate creditors by putting the proceeds of the recovery back in the corporation; 3) it protects the interests of all shareholders by increasing the value of their shares, instead of allowing a recovery by one shareholder to prejudice the rights of others not a party to the suit; and 4) it adequately compensates the injured shareholder by increasing the value of his shares. See, Comments, Corporations — Shareholders' Derivative and Direct Actions — Individual Recovery, 35 N. C. L. Rev. 279 (1957); Kirk v. First Nat. Bank of Columbus, 439 FSupp. 1141 (9) (M. D. Ga. 1977).

We will now examine this case to see if these reasons are applicable. First, Mrs. Dickson is the *only* injured shareholder; consequently, there can be no multiplicity of lawsuits, and there is no concern that a recovery by her will prejudice the rights of other

---

[1] We are assuming without deciding that the injury here was primarily one of misappropriation of corporate funds and not a direct injury to the shareholder. We do so because this case can be decided on the more narrow ground which follows; however, in an appropriate case this issue might have to be reached. See, 13 Fletcher, Cyclopedia of Corporations (Perm. Ed.), § 5911; 3B Moore's Federal Practice, § 23.1.16 [1]; Eisenberg v. Flying Tiger Line, 451 F2d 267 (2nd Cir. 1971).

shareholders.

In addition, Mrs. Dickson would not be adequately compensated by a corporate recovery. For a shareholder, the potential benefit of a corporate recovery in such cases is the increase in the value of his or her shares. See, Note, Distinguishing Between Direct and Derivative Shareholder Suits, 110 U. of Penn. L. Rev. 1147 (1962). There would be no such benefit to Mrs. Dickson, however, since, in a closely held corporation, there is no ready market for her shares.

The final consideration underlying the general rule, the protection of creditors, is also not present in this case. The audit reports of Trio introduced below indicate that for the fiscal years 1976 through 1980, Trio was paying its debts as they came due, and that there was no outstanding or dissatisfied creditor. Additionally, neither Thomas nor Akin offered evidence of any creditor in need of protection.

Because the above reasons for limiting suits for recovery of misappropriated corporate funds to derivative actions are designed to protect all interested parties; i.e., creditors, other shareholders, and directors among others, we disapprove of the blanket rule applied by the Court of Appeals in this case. It held that if the majority shareholder-wrongdoer would benefit from the corporate recovery, the injured shareholder has an automatic right to maintain a direct action. This rule does not consider the possibility of prejudice to other interested parties, such as creditors or other shareholders. If such a possibility exists, a direct recovery should not be allowed.

Because Mrs. Dickson was *the sole injured* shareholder and because the reasons underlying the general rule calling for corporate recovery do not exist in this case, we find that Mrs. Dickson was properly allowed to bring this direct action.

*Judgment affirmed. All the Justices concur, except Smith and Weltner, JJ., who concur specially and Clarke, J., who dissents.*

DECIDED MARCH 17, 1983 —
REHEARING DENIED APRIL 1, 1983.

*Richard B. Herzog, Jr., James E. Massey,* for appellant.
*Daniel M. Coursey, Jr.,* for appellee.

SMITH, Justice, concurring specially.

While I concur in the majority opinion, I write separately to emphasize that I do not join the view that the remedy approved in

this case is available only to a sole injured shareholder. It would be a serious error to limit direct actions for recovery of misappropriated corporate funds to cases where only one shareholder is injured, or to declare flatly that such actions lie only in the context of closely held corporations. Of course, the nature of the remedy discussed by the majority makes its application more likely in these situations; but in my view a direct action should be available, where justice requires, based on a careful evaluation of the facts of each case.

WELTNER, Justice, concurring specially.

I concur in the judgment only. In this case, Mrs. Dickson is the *sole* stockholder who might complain of the conduct of the other stockholders. It should be noted that her complaint contained a count seeking compulsory distribution of profits as dividends. Thus, stripped of the technicalities of pleadings, Mrs. Dickson states a claim upon which relief can be granted, in the nature of a stockholder's derivative action combined with an application to require distribution of improperly withheld dividends.

Were there more than one stockholder who might possibly make complaint, I would apply the usual requirement that relief be sought in the nature of a stockholder's derivative action. Here, however, the grant of relief in this case does not destroy the integrity of the corporate entity, nor does it otherwise diminish traditional principles relative to the discretion of directors in the declaration of dividends.

CLARKE, Justice, dissenting.

Business corporations play an important role in the modern commercial world. It is my view that the holding of the majority infringes on the integrity of the nature of a business corporation as a legal entity. I fear such an infringement will impede the free rotation of the wheels of commerce. I must therefore dissent.