A06A1639. SOUTHWEST HEALTH & WELLNESS, LLC et al. v.
WORK et al.
A06A1928. LAYNE et al. v. SOUTHWEST DOCTORS GROUP,
LLC.

(639 SE2d 570)

ANDREWS, Presiding Judge.

Both of these appeals involve disputes between some of the majority and minority members of Southwest Doctors Group, LLC (SDG) regarding efforts to obtain financing to reopen Legacy Medical Center, formerly known as Southwest Hospital, in Atlanta. They have been consolidated for purposes of appeal.

In Case No. A06A1639, plaintiffs Southwest Health & Wellness, LLC (Dr. Ed Layne), Southwest Development Partners, LLC (Ron Bivens and Larry Haynes), and Dr. Mai Ha, minority members of SDG, appeal from the trial court's grant of the motion for judgment on the pleadings filed by defendants Dr. Frederick Work, Dr. Celio Burrowes, and Dr. John Ross, three of the majority members of SDG, on plaintiffs' 15-count complaint.[1] The complaint contained, among others, claims including breach of the operating agreement, violation of fiduciary duty, violations of the federal Patriot Act and Foreign Investment in Real Property Tax Act, and unjust enrichment.

In Case No. A06A1928, defendants Dr. Ed Layne, Dr. Mai Ha, Ron Bivens and Larry Haynes d/b/a Southwest Development Partners, LLC, appeal from the trial court's January 30, 2006 order permitting Dr. John Ross to vote the membership interests of these defendants based on their failure to execute the proxy required by the July 22, 2005 settlement agreement entered into between defendants and SDG. The complaint filed by the majority members claimed breach of the settlement agreement and sought specific performance of it.

SDG, originally composed of Drs. Work, Layne, Ross, and Burrowes,[2] purchased Southwest Hospital and its assets from the bankruptcy estate. It was their intention to bring in other investors with more resources to get the hospital back up and running. Some potential investors fell through, but, eventually Ron Bivens was brought into SDG as a ten percent stockholder. Bivens knew Tracy Sayers, a former hospital administrator, and arranged for financing through Sayers in June 2005. The loan was a one-year loan from

---

[1] We note, as pointed out by SDG, that the record in Case No. A06A1639 forwarded to this Court by the Fulton County Superior Court Clerk's Office is divided into two parts, each of which contains some, but not all, of the contents of the other. Also, the documents are not arranged chronologically, making our review difficult.

[2] Each originally had a 25 percent share of the LLC.

Tracy L. Sayers Investments, LLC. Dr. Ross and the other majority members did not intend for this to be a long-term loan, only a bridge loan.

On July 20, 2005, the minority members named above filed their complaint and petition for injunctive relief against Drs. Work, Burrowes, and Ross seeking to halt a meeting that evening of the members of SDG which had been called for the purpose of bringing in investor St. George Crosse. A temporary restraining order ("TRO") was ordered ex parte on July 20, 2005. The TRO was lifted on July 22, 2005, when the trial court directed the parties to enter into settlement discussions. Following a day of negotiations, an agreement was entered into delaying Crosse's entry into SDG in exchange for irrevocable proxies from the minority members allowing Dr. John Ross to vote their shares in an effort to obtain long-term financing. That agreement was signed by the attorneys of the parties.

Obtaining long-term financing was difficult, however, and Sayers was repeatedly asked to extend the bridge loan, but would not. Finally, in mid-December 2005, $19,000,000 in long-term financing had been arranged with Premier Financial Solutions, for which Dr. Work and others paid a $280,000 commitment fee from personal funds. The December 15, 2005 payment due on the Sayers loan was not paid by SDG because SDG was in the middle of closing the long-term loan, and Sayers told Dr. Work that he would work with SDG on the matter. Nevertheless, on December 16, attorneys for Tracy L. Sayers Investments, LLC, wrote a notice of default letter to SDG accelerating the payment of the entire loan. Dr. Work did not receive the letter until December 27. He immediately attempted to contact Sayers, with whom he had been in constant communication over the past weeks, but could not reach him. Dr. Work did contact the attorney who sent the letter and was told that the letter was a routine default letter and that Sayers did not intend to foreclose. On December 28 or 29, however, Sayers did advise SDG that it was his intent to foreclose and the only option he offered was for SDG to issue a deed in lieu of foreclosure. Although the minority members agreed to issue such a deed, the majority refused and continued to seek replacement financing. The majority was working on a $28,000,000 loan in January 2006, when a January 6, 2006 foreclosure notice from another attorney for Tracy L. Sayers Investments, LLC, was received. Since the only default had been the missed December payment, the majority attempted to make that payment and the January payment to Sayers' attorney by wire transfer of January 17, but it was refused. On January 26, 2006, SDG filed its complaint seeking specific performance of the July 22, 2005 settlement agreement because the operating agreement required a 66.67 percent majority of the members of the LLC to obtain replacement financing.

Following a hearing on Friday, January 27, 2006, the trial court indicated a ruling would be forthcoming on Monday, January 30, 2006, and directed the minority members to be present in case they were required to sign proxies. On January 30, the trial court entered an order directing that the minority members sign the proxies. There is nothing in the record indicating that any proxies were signed. Instead, the trial court issued a second order that same day which permitted Dr. John Ross to vote the membership interests on behalf of Dr. Mai Ha, Dr. Ed Layne, Ron Bivens, and Larry Haynes d/b/a Southwest Development Partners, LLC.

Counsel for the minority members stated that an appeal would be filed which would stay the trial court's order, allowing foreclosure to occur. SDG filed a motion for supersedeas bond, which was granted, although no bond was posted. Although not considered relevant by the trial court regarding the enforceability of the July 22, 2005 settlement agreement, defendant minority members proffered as exhibits at the January 26, 2006 hearing proxies which were signed in November 2005, by them giving Ron Bivens authority to obtain replacement financing.

Attempts to obtain replacement financing continued and by the first of February 2006, the loan proceeds had been wired to Atlanta and the replacement loan was ready to close. By letter of February 2, 2006, the attorney for the minority members notified the title insurance company that the minority members claimed the majority members of SDG did not have authority to obtain such financing. As a result of that letter, the title insurance was not approved and the lender backed out of the deal.

On February 6, 2006, SDG filed an amended complaint in Case No. A06A1928 against the original minority members and added as defendants Tracy Sayers and Tracy L. Sayers Investments, LLC. The complaint sought, among other relief, the issuance of a TRO to stop the pending foreclosure. The trial court issued a TRO enjoining foreclosure for 30 days.

On March 6, 2006, SDG voluntarily dismissed without prejudice the complaint as to defendants Drs. Layne and Ha, and Bivens and Haynes d/b/a Southwest Development Partners, LLC, and with prejudice as to defendants Tracy L. Sayers Investments, LLC, and Tracy Sayers, individually.

*Case No. A06A1928*

1. We first consider the issue of our jurisdiction.

(a) It is our duty to inquire on our own motion into the issue of this Court's jurisdiction. *Whipple v. City of Cordele*, 231 Ga. App. 274, 275 (1) (499 SE2d 113) (1998); *Thibadeau v. Hendon*, 221 Ga. App. 258 (471 SE2d 52) (1996).

Appellants' notice of appeal was filed on January 30, 2006, and stated it was from the trial court's "Order dated 30 January 2006, in which this Court granted judgment in favor of Plaintiffs and against Defendants in the above-referenced case." We first note that, as set out above, there were two orders entered on January 30, one of which directed defendants to sign proxies, the other of which allowed Dr. Ross to vote their membership interests. Therefore, we cannot determine from the notice of appeal which of these orders is sought to be appealed. Further, neither order appears to be a final judgment in the case.

"Where the notice of appeal specifies that the appeal is taken from an order which is not appealable and where the appeal is in fact taken from such an order, the appeal is subject to dismissal. See generally *Parish v. Ga. R.R. Bank &c. Co.*, 115 Ga. App. 540 (154 SE2d 750) (1967); OCGA § 5-6-48 (b) (2)." *Martin v. Farrington*, 179 Ga. App. 227 (346 SE2d 5) (1986). See also *Richardson v. Gen. Motors Corp.*, 221 Ga. App. 583 (472 SE2d 143) (1996).

The notice of appeal here is from an order which is interlocutory and therefore appealable only pursuant to OCGA § 5-6-34 (b). Consequently, no certificate of immediate review having been obtained and since no amendment has been "filed to correct [the] defect [in the notice of appeal, the appeal must be dismissed]. Compare *Steele v. Cincinnati Ins. Co.*, 252 Ga. 58 (311 SE2d 470) (1984); *Blackwell v. Cantrell*, 169 Ga. App. 795 (1) (315 SE2d 29) (1984)." *Martin*, supra.

Therefore, this Court is without jurisdiction to entertain the appeal. *Richardson*, supra.

(b) Also, the impact of the voluntary dismissal on the case must be considered.

A voluntary dismissal under OCGA § 9-11-41 (a) is a matter of right and terminates the action. *Page v. Holiday Inns*, 245 Ga. 12, 13 (262 SE2d 783) ((1980)). Further, Georgia's Civil Practice Act apparently makes no provision for the reinstatement of an action after dismissal as distinguished from a recommencement. Davis & Shulman's Ga. Practice & Procedure, § 13-4 (4th Ed. 1975). *Matthews v. Riviera Equip.*, 152 Ga. App. 870 (1) (264 SE2d 318) ((1980)). . . . (Punctuation and footnote omitted.) *Collier v. Evans*, 205 Ga. App. 764, 767 (4) (423 SE2d 704) (1992)

*Villani v. Edwards*, 251 Ga. App. 293, 294 (1) (554 SE2d 184) (2001).

Because the action was dismissed prior to the entry of any appealable judgment, there is no issue of the "ripening" of the notice of appeal and the appeal is dismissed. See *Steele v. Cincinnati Ins. Co.*, supra; *Steele v. Steele*, 243 Ga. 522, 523 (1) (255 SE2d 43) (1979).

### Case No. A06A1639

2. In this case, we consider the trial court's grant of judgment on the pleadings to defendants Drs. Frederick Work, Celio Burrowes, and John Ross, three of the majority members, on the 15-count complaint of minority members Southwest Health & Wellness, LLC (Dr. Ed Layne), Southwest Development Partners, LLC (Ron Bivens and Larry Haynes), and Dr. Mai Ha.

In this state, when

deciding a motion for judgment on the pleadings, the issue is whether the undisputed facts appearing from the pleadings entitle the movant to judgment as a matter of law. All well-pleaded material allegations by the nonmovant are taken as true, and all denials by the movant are taken as false. But the trial court need not adopt a party's legal conclusions based on these facts.

(Citations and punctuation omitted.) *Holsapple v. Smith*, 267 Ga. App. 17, 20 (1) (599 SE2d 28) (2004).

Thus, the question before us

is whether the undisputed facts appearing from the pleadings indicate that [defendants are] entitled to judgment as a matter of law. Where the part[ies] moving for judgment on the pleadings [do] not introduce affidavits, depositions, or interrogatories in support of [their] motion, such motion is the equivalent of a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. The motion to dismiss should not be granted unless the averments in the complaint disclose with certainty that the plaintiff[s] would not be entitled to relief under any state of facts which could be proved in support of [their] claim.

(Citations omitted.) *Cox v. Turner*, 268 Ga. App. 305 (1) (601 SE2d 728) (2004).

We review a trial court's order dismissing a plaintiff's complaint de novo. *Moore v. BellSouth Mobility*, 243 Ga. App. 674, 675 (534 SE2d 133) (2000).

(a) Appellants first contend that the trial court's ruling on appellees' motion for judgment on the pleadings was premature, citing *Gillis v. American Gen. Life &c. Ins. Co.*, 222 Ga. App. 891 (476 SE2d 648) (1996).

The original complaint was filed on July 20, 2005. It was amended first on August 3, 2005, and then again on November 14, 2005. On October 5, 2005, appellees filed their motion for judgment on the pleadings. Appellees filed a motion for expedited hearing, but there is no order in the record ruling on it. On November 7, 2005, appellants' response to the motion for judgment on the pleadings was filed.

*Gillis*, supra, does not stand for the proposition that a motion for judgment on the pleadings can only be filed following completion of discovery, as urged by appellants. There, a former employee filed a claim of slander against her former employer and two of its agents. Defendants filed a motion to dismiss for failure to state a claim, which the trial court granted because the complaint did not specifically allege that the employer "expressly ordered and directed defendants . . . to utter disparaging words" about the plaintiff. Id. at 892. The complaint did allege that the employees uttered disparaging words about the plaintiff in the business community and that the employer was liable under respondeat superior. Because one is not required to plead specifically all facts necessary to prove a claim, but to only set out a claim for relief, and it was conceivable that the employer could have directed the co-defendants to slander plaintiff under the claim set out, the complaint was found sufficient. Id.

Here, however, the issue is whether the minority members can maintain a direct action as opposed to a derivative action regarding the actions of the majority.

> The determination of whether a claim is derivative or direct "is made by looking to what the pleader alleged. It is the nature of the wrong alleged and not the pleader's designation or stated intention that controls the court's decision." *Phoenix Airline Svcs. v. Metro Airlines*, 260 Ga. 584, 585 (1) (397 SE2d 699) (1990).

*Dunn v. Ceccarelli*, 227 Ga. App. 505, 507 (1) (489 SE2d 563) (1997) (physical precedent only).

(b) The trial court here found, as argued by appellees, that plaintiffs' complaint should be dismissed because all the claims should have been made as derivative claims instead of direct claims.

As described in *Phoenix Airline Svcs.*, supra at 586, a shareholders' derivative suit is brought on behalf of the corporation for harm done to it and any damages recovered are paid to the corporation. While shareholders may also bring direct actions for injuries done to

them in their individual capacities by corporate fiduciaries, in order to pursue such a direct claim the shareholder must allege more than a wrong done to the corporation, either a separate and distinct injury from that suffered by other shareholders or a wrong involving a contract right existing independently of any right of the corporation. Id.; see also *Grace Bros., Ltd. v. Farley Indus.*, 264 Ga. 817, 819 (2) (450 SE2d 814) (1995).

Here, appellants claim such a special injury with respect to each of the 15 counts of the amended complaint, contending each count involved a unique injury with damages special to them based on a duty owed them directly. These claims, according to appellants' brief, are violations of the Operating Agreement, the Private Placement Memorandum, the Patriot Act, and the Foreign Investment in Real Property Tax Act, fraud, misrepresentation, misuse and mishandling of corporate assets, unjust enrichment, and failure to disclose information regarding finances and sales of shares. Further, according to the brief, "[e]ach and every claim asserted by [appellants] results from Defendants' breach of fiduciary duty to disclose. . . ."

"The general rule is that a shareholder seeking to recover misappropriated corporate funds may only bring a derivative suit." (Punctuation and footnote omitted.) *Matthews v. Tele-Systems*, 240 Ga. App. 871, 872 (525 SE2d 413) (1999). See also *Pickett v. Paine*, 230 Ga. 786 (199 SE2d 223) (1973) (claims for misappropriation and waste of corporate assets belong to the corporation); *Haskins v. Haskins*, 278 Ga. App. 514, 520 (1) (629 SE2d 504) (2006).

An examination of appellants' claims in the amended complaint reveals that it is replete with general allegations of injuries separate and apart from the other shareholders, but the allegations do not demonstrate how this is true. *Haskins*, supra at 519.

Appellants contend that their allegations of usurpation of voting rights as well as dilution of shares and power, constituted a separate and distinct injury entitling them to a direct action, citing as authority *In re Tri-Star Pictures*, 634 A2d 319 (Del. 1993).

That case, however, involved massive dealings between Tri-Star Pictures and Coca-Cola, followed by a merger with Sony, which "with its related transactions and surrounding facts, is complicated and convoluted — sufficient to daunt any but the most determined analyst or challenger." *In re Tri-Star Pictures*, supra at 320.

In *Tri-Star*, supra, Coca-Cola, as the majority shareholder of Tri-Star (in conjunction with other shareholders, such as HBO), went through years of dealings to obtain most of the assets of the company for itself, at no cost to itself, and then to defeat the minority shareholders' claims by another deal with Sony. It went so far as to become a situation where a parent corporation assigned its managers to the

subsidiary's board to play the part of provincial governors. *In re Western Nat. Corp. Shareholders Litigation*, 2000 Del. Ch. LEXIS 82.

In *Tri-Star*, supra, the proportionate interest of the majority increased substantially following the mergers, while diluting the voting power of the minority and depriving them of their right to bring a derivative action by the final merger with Sony. *In re Tri-Star Pictures*, supra at 320.

Nothing of the sort happened in this case where the interests of all the shareholders were diminished in proportion to their ownership by the selling of interests to new shareholders.

Therefore, there was no error in the trial court's grant of appellees' motion for judgment on the pleadings.

(c) Alternatively, appellants argue that, if no special injury has been alleged by their complaint, because SDG is a closely held corporation, minority shareholders may, in certain circumstances, nonetheless file a direct action. *Stoker v. Bellemeade, LLC*, 272 Ga. App. 817, 821 (3) (615 SE2d 1) (2005), rev'd in part on other grounds, *Bellemeade, LLC v. Stoker*, 280 Ga. 635 (631 SE2d 693) (2006).

In *Stoker*, supra, this Court did conclude that

> even where the allegations of the complaint do not show standing to assert a direct action, a direct action may nevertheless be proper in the context of a closely held corporation *where the circumstances show that the reasons for the general rule requiring a derivative suit do not apply. Thomas v. Dickson*, 250 Ga. 772, 774-775 (301 SE2d 49) (1983); *Grace Bros.*, [supra] at 819. As set forth in *Thomas*, supra, the reasons for requiring derivative suits in the ordinary corporate context are (1) to prevent multiple suits by shareholders; (2) to protect corporate creditors by ensuring that the recovery goes to the corporation; (3) to protect the interest of all the shareholders by ensuring that the recovery goes to the corporation, rather than allowing recovery by one or a few shareholders to the prejudice of others; and (4) to adequately compensate injured shareholders by increasing their share values. Id. at 774. Because none of these reasons applied in the context of the closely held corporation in *Thomas*, supra, the court found that a direct action by the shareholder for misappropriation of corporate funds was proper. Id. at 774-775.

(Emphasis supplied.) Id. at 822 (3).

The same rationale was applied in *Stoker*, supra. There, however, both members of the LLC involved in each claim were parties to the suit, resulting in no danger of multiple suits and no concern that

a recovery in a direct action would prejudice the rights of any other member. In the present case, however, as acknowledged by appellants, in addition to the parties to this litigation, "shares were sold to Sudie, Inc. and Harvey Leslie." Sudie, Inc. provided $500,000 in exchange for a 500,000 Class A membership interest and Leslie invested $250,000, with a promise of $250,000 more.

Although appellants state in their brief that these two shareholders were given the opportunity to participate in these proceedings and chose not to, there is nothing in the record or transcripts here to so indicate.

" ' "[T]he burden is on the appellant to show error by the record. . . . (Cits.)" (Cit.)' [Cit.]" *Malcolm v. State*, 263 Ga. 369, 371 (3) (434 SE2d 479) (1993). See also *Dept. of Human Resources v. Corbin*, 202 Ga. App. 10, 11 (413 SE2d 484) (1991) (quoted in *Malcolm*). This burden cannot be discharged by recitations of error in the brief. *Stover v. Candle Corp. &c.*, 238 Ga. App. 657, 661 (3) (520 SE2d 7) (1999).

Therefore, we conclude that the appellants failed to satisfy at least one of the four criteria in *Thomas*, supra, which would allow them to proceed directly instead of through a derivative suit.

(d) Finally, as noted above, on the same day the trial court ruled on appellees' motion for judgment on the pleadings, a second amended complaint purporting to be a derivative action was filed by appellants.

First, we note that Fulton County does not time stamp filings; therefore, the record only reflects that the judgment and the amended complaint were filed on November 14, 2005. Because there is a legal presumption that the trial court considered the entire record before rendering its decision, and nothing in the record here indicates otherwise, we conclude that the attempted second amendment to the complaint was not filed until the court had already ruled. *State v. Peirce*, 257 Ga. App. 623, 627 (2) (571 SE2d 826) (2002). Therefore, we do not consider it further.

*Judgment affirmed in Case No. A06A1639. Appeal dismissed in Case No. A06A1928. Mikell and Bernes, JJ., concur.*

DECIDED NOVEMBER 29, 2006.

*Axam & Adams, Tony L. Axam, Paul M. Spizzirri*, for appellants.
*Delong, Caldwell & Bridgers, Charles R. Bridgers, Lawson & Thornton, George O. Lawson, Jr.*, for appellees (case no. A06A1639).
*Molden, Holley, Fergusson, Thompson & Heard, Regina S. Molden*, for appellee (case no. A06A1928).