**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 13, 2023**

# In the Court of Appeals of Georgia

A23A0280, A23A0330. PREMIER RESIDENTIAL SE, LLC et al. v. SILVERSTONE RESIDENTIAL, LLC et al.; and vice versa.

MILLER, Presiding Judge.

This case involves contentious and complicated litigation between former business partners who owned and operated Premier Residential SE, LLC, a housing construction company. Premier filed this lawsuit against its former president and COO Steve Connor and Connor's company, Silverstone Residential, LLC, alleging that Connor and Silverstone failed to transfer to Premier the profits from housing construction projects after Connor had been removed from his position at Premier. In turn, Connor and Silverstone counterclaimed against Premier, its CEO Scott Schmidt and CFO Joe Dan Rogers, and various related entities, alleging that Schmidt and Rogers had deprived Premier of its assets and transferred them to other entities in an

attempt to remove Silverstone's access and rights to the assets as a minority shareholder of Premier. The jury returned a mixed verdict at trial, and the parties now appeal.

In Case No. A23A0280, Premier, Schmidt, Rogers, and Schmidt Development Co., LLC appeal from the jury's verdict, arguing that (1) the trial court erred by failing to direct a verdict on Silverstone's counterclaims for breach of fiduciary duty against Schmidt and Rogers and fraudulent transfer under the Georgia Uniform Voidable Transfers Act ("UVTA") against Schmidt Development; (2) the jury's award of attorney fees against Premier must be reversed because the jury did not award any underlying compensatory damages against Premier and because the trial court did not limit the fee award to the work done on Silverstone's successful claims; (3) the trial court improperly interpreted the jury's verdict and failed to award Premier separate damages for its claims for breach of contract and breach of fiduciary duty; and (4) the trial court erred by granting Silverstone's request for a supersedeas bond without conducting a hearing. We conclude that the evidence at trial was insufficient to sustain the verdict in favor of Silverstone's fraudulent transfer claim, and so we reverse the jury's verdict on that claim and remand for a new trial. We also agree that the jury's verdict awarding attorney fees to Silverstone was improper and must be

2

reversed. We otherwise affirm the jury's verdict and the trial court's related orders addressing these issues.

In Case No. A23A0330, Silverstone cross-appeals from the trial court's order granting summary judgment on its fraudulent transfer cross-claim against various third party defendants and its order directing a verdict on its cross-claim for conversion against Silverstone Residential Georgia, LLC ("SRG"). We agree that the trial court erred by granting a directed verdict on Silverstone's conversion claim, but we affirm the trial court's grant of summary judgment on Silverstone's fraudulent transfer claim.

> In reviewing a verdict after the denial of a motion for new trial, we follow well-established principles. Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of the motion for new trial will not be disturbed.

(Citation and punctuation omitted.) *Crump v. McDonald*, 239 Ga. App. 647, 650 (3) (520 SE2d 283) (1999).

So viewed, the record shows that Connor, Schmidt, and Rogers founded Premier, a company that builds and sells residential homes. The operating agreement provided that Schmidt Development (Schmidt's business entity) owned 40% of Premier, Silverstone (Connor's business entity) owned 40%, and Valliant Enterprises, Inc. (Rogers' business entity) owned the remaining 20%. Schmidt was Premier's CEO, Connor was Premier's COO and President, and Rogers was Premier's CFO and Vice-President of Marketing. An amendment to Premier's operating agreement provided that none of its officers could claim a salary or management fee in excess of $150,000 per calendar year without the unanimous consent of its members. Schmidt and Connor were also members of SRG, another residential construction business.

Between 2016 and 2017, Schmidt used the funds in his Individual Retirement Account ("IRA") to purchase 27 lots in the Village Crossing area of Clayton County, Georgia. Because of legal issues, however, Schmidt could not directly transfer the lots from the control of his IRA to another company that he operated with Rogers because Schmidt had an ownership interest in the other company. As a result, Schmidt transferred the lots to Silverstone. Silverstone and Premier then reached an agreement wherein Premier would build homes on the lots, Silverstone would sell the homes,

and then Silverstone would transfer the sales proceeds to Premier as payment for the construction of the homes.

In May 2017, the other members of Premier moved to remove Connor as an officer of Premier for various reasons including alleged poor work performance. Connor was also removed as a member of SRG and was briefly replaced by Rogers. At that time, all but three of the Village Crossing lots had been sold to buyers. After Connor was removed, he and Silverstone refused to give Premier the proceeds from the final three sales. The total net proceeds from the final three sales was $143,577.04.

At the time Connor was removed from his position at Premier, Premier's internal documents listed a number of lots that were under development by Premier. In December 2017, Premier paid Schmidt Development $141,643.62 in management fees and awarded Valliant Enterprises $70,673.10 in management fees. In July 2018, Premier paid Schmidt Development $179,634.62 in management fees and paid Valliant Enterprises $88,173.10 in management fees. Connor did not approve of the payment of these management fees. By October 2018, a substantial number of the lots that had been designated as Premier lots on its internal documents had been transferred to SRG.

5

Premier filed the instant complaint against Silverstone and Connor, raising claims for breach of contract, unjust enrichment, breach of fiduciary duty, and attorney fees, all based on Silverstone's and Connor's refusal to pay or reimburse them for proceeds from the final three Village Crossing lots. Silverstone and Connor filed an answer and raised various counterclaims against Premier as well as cross-claims against Schmidt, Schmidt Development, Rogers, SRG, and various other related entities, generally alleging that the actions taken after Connor's removal were impermissible attempts to deprive Premier of its assets and transfer them to other entities to remove Connor's and Silverstone's rights to Premier's assets as a minority shareholder.

During trial, the trial court granted SRG's motion for a directed verdict on all of Silverstone's claims against it. As to Premier's claims, the jury found (1) in favor of Premier on its claims for breach of contract, unjust enrichment, and breach of fiduciary duty, entering a damages amount of $192,107.87 for each claim; and (2) in favor of Premier on its claim for attorney fees in the amount of $83,711.32. On Silverstone's claims, the jury found (1) in favor of Silverstone on its claim for breach of fiduciary duty against Schmidt and Rogers in the amounts of $107,415.39 and $53,707.70, respectively; (2) in favor of Silverstone on its claim for a fraudulent

transfer and against Schmidt Development in the amount of $1,508, 967.02; and (3) against Premier on Silverstone's claim for attorney fees in the amount of $377,756.05. The trial court interpreted the verdict to presume that the jury meant to award $192,107.87 in total damages for Premier on its three claims, and it then offset the awards between Premier and Silverstone (which resulted in a net award of $101,936.86 in Silverstone's favor) and entered judgment accordingly.

Premier, Schmidt, Rogers, and Schmidt Development Co. moved for j.n.o.v. seeking to set aside the verdicts on Silverstone's claims. Premier also moved to correct the judgment, arguing that the jury meant to award $192,107.87 for each of the breach of contract and breach of fiduciary duty claims, resulting in a total damages award of $384,215.74. The trial court denied the post-judgment motions, and these appeals followed.

*Case No. A23A0280*

1. Schmidt and Rogers first argue that the trial court erred by failing to direct a verdict in their favor on Silverstone's and Connor's breach of fiduciary duty claim based on alleged corporate waste and mismanagement of assets due to the payment of the management fees in December 2017 and July 2018. We conclude that the trial court properly allowed the jury to consider this claim.

7

The appellants primarily argue that there was no evidence that Schmidt and Rogers owed a fiduciary duty to Connor or Silverstone and that, in any event, Silverstone would have had to pursue this fiduciary duty claim as a derivative suit on Premier's behalf. The appellants did not present these arguments when they moved for a directed verdict on the fiduciary duty claim at trial, however, as they only argued that the management fees were properly calculated and were reasonable compensation for the work that Schmidt and Rogers performed for Premier. Nevertheless, "a party is free to contend on appeal that the evidence is insufficient to support a verdict even if the party failed to move for a directed verdict, a j.n.o.v., or new trial in the trial court." (Citation and punctuation omitted.) *Redmon v. Daniel*, 335 Ga. App. 159, 163 (1) n.5 (779 SE2d 778) (2015). While the "[f]ailure to move for a directed verdict bars the party from contending on appeal that he is entitled to judgment as a matter of law because of insufficient evidence[, t]his failure does not, however, bar the party from contending that he is entitled to a new trial on that ground." (Citation and punctuation omitted.) *Renee Unlimited, Inc. v. City of Atlanta*, 301 Ga. App. 254, 257 (2) (687 SE2d 233) (2009). Accordingly, we will review these arguments "under the 'any evidence' standard of review to determine if [the appellants] were entitled to a new trial on" this issue. Id. at 258 (2).

8

> In considering a ruling on a motion for a directed verdict, the evidence must be construed most favorably to the party opposing the motion. A court may grant a directed verdict only when no conflict exists in the evidence and the evidence presented, with all reasonable inferences therefrom, demands a particular verdict. Thus, on appeal of a grant of a directed verdict, we apply the any evidence standard[.]

(Citations and punctuation omitted.) *Tom Brown Contracting, Inc. v. Fishman*, 289 Ga. App. 601, 601-602 (658 SE2d 140) (2008). "Where *any* evidence – even slight evidence – supports the opposing party's case, a directed verdict is improper." (Citation omitted; emphasis in original.) *Rivers v. South Auction & Realty*, 351 Ga. App. 179, 183 (2) (830 SE2d 636) (2019).

"A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." (Citation omitted.) *Fishman*, supra, 289 Ga. App. at 603 (1).

(a) First, we conclude that there was at least some evidence to show that Silverstone was entitled to litigate this claim as a direct action and was not required to pursue it as a derivative action.

"The general rule is that a shareholder seeking to recover misappropriated corporate funds may only bring a derivative suit" because "claims for

9

misappropriation and waste of corporate assets belong to the corporation." (Citation omitted.) *Southwest Health & Wellness, LLC v. Work*, 282 Ga. App. 619, 625 (2) (b) (639 SE2d 570) (2006). "[E]ven where the allegations of the complaint do not show standing to assert a direct action, a direct action may nevertheless be proper in the context of a closely held corporation *where the circumstances show that the reasons for the general rule requiring a derivative suit do not apply*." (Citation omitted; emphasis in original.) Id. at 626 (2) (c). As the Supreme Court of Georgia has provided, the reasons for requiring derivative suits in the ordinary corporate context are (1) to prevent multiple suits by shareholders; (2) to protect corporate creditors by ensuring that the recovery goes to the corporation; (3) to protect the interest of all the shareholders by ensuring that the recovery goes to the corporation, rather than allowing recovery by one or a few shareholders to the prejudice of others; and (4) to adequately compensate injured shareholders by increasing their share values. *Thomas v. Dickson*, 250 Ga. 772, 774 (301 SE2d 49) (1983).

Here, none of the *Thomas* factors applies to the instant suit. All three of Premier's members (Silverstone, Schmidt Residential, and Valiant Enterprises) are parties to this lawsuit, so there is "no danger of multiple suits and no concern that a recovery in a direct action would prejudice the rights of any other member."

10

*Southwest Health & Wellness, LLC*, 282 Ga. App. at 626-627 (2) (c). The parties have not directed us to any record evidence that Premier has any outstanding or dissatisfied creditors at the time of this lawsuit. Finally, Silverstone would not be adequately compensated by a corporate recovery that could theoretically increase the value of its shares of Premier because "in a closely held corporation, there is no ready market for [its] shares." *Thomas*, supra, 250 Ga. at 774. "[B]ecause the reasons underlying the general rule calling for corporate recovery do not exist in this case, [Silverstone] was properly allowed to bring this direct action." Id. at 775.

(b) We also conclude that there is some evidence in the record establishing that Rogers and Schmidt, as officers of Premier, owed a fiduciary duty to Silverstone. "It is well settled that corporate officers and directors have a fiduciary relationship to the corporation and its shareholders and must act in good faith." (Citation omitted.) *Paul v. Destito*, 250 Ga. App. 631, 635 (1) (550 SE2d 739) (2001). "A fiduciary's duty of good faith prohibits him from appropriating for himself the assets and property of the corporation, to the exclusion of minority shareholders." (Citation omitted.) *Quinn v. Cardiovascular Physicians, P. C.*, 254 Ga. 216, 219 (5) (326 SE2d 460) (1985). Indeed, Georgia law specifically provides that a shareholder may bring an action to compel a corporate officer to account for "[t]he acquisition, transfer to others, loss,

11

or waste of corporate assets due to any neglect of, failure to perform, or other violation of duties[.]" OCGA § 14-2-831 (a) (1) (B). Thus, Rogers and Schmidt owed a fiduciary duty to Silverstone, a Premier shareholder, not to improperly appropriate Premier's assets for themselves.

(c) Finally, there was at least some evidence in the record showing that the management fees were improper.

In total, over two payments, Schmidt received $329,644.62 and Rogers received $163,173.10 in management fees. Premier's operating agreement provided that none of its officers could claim a salary or management fee in excess of $150,000 per calendar year without the unanimous consent of its members. The management fee distributions caused Schmidt to receive more than $150,000 for each of the calendar years of 2017 and 2018, and Connor testified that he did not approve of these management fees. The management fees were also supposedly based on the sale of 13 homes, but previous management fees that the company awarded were usually between $1,185 and $3,000 per home. Silverstone also presented evidence of a letter from Premier's attorney which demanded that the management fees be returned because they were improper and were not in compliance with the operating agreement. A jury could find from this evidence that these fees were an improper

attempt by Schmidt and Rogers to deprive Premier of its assets in an attempt to remove them from the access of the minority shareholder Silverstone, and so the trial court did not err by denying the motion for a directed verdict on this claim.

2. Schmidt Development next argues that the trial court erred by denying his motion for a directed verdict on Silverstone's fraudulent transfer claim based on the alleged transfer of property lots from Premier to SRG. It argues that (1) Silverstone and Connor are not "creditors" under the UVTA; (2) Silverstone and Connor failed to establish that Premier ever owned the relevant lots; and (3) Silverstone and Connor failed to establish that the lots were actually transferred from Premier to SRG. We agree that the evidence was insufficient to establish that Silverstone and Connor were "creditors" of Premier so as to allow them to pursue a fraudulent transfer claim under the UVTA, and so we reverse the jury's verdict on this claim and remand for a new trial.

While the appellants did not raise an argument that Silverstone and Connor were not creditors of Premier as part of its motion for directed verdict below, as noted above, we may nevertheless review the sufficiency of the evidence supporting this claim to determine if Schmidt Development is entitled to a new trial on this claim. *Renee Unlimited, Inc.*, supra, 301 Ga. App. at 257 (2).

13

The UVTA is codified at OCGA § 18-2-70 et seq. and provides that

a transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

OCGA § 18-2-74 (a) (2). It further provides that

[a] transfer made or obligation incurred by a debtor is voidable as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange

14

for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

OCGA § 18-2-75 (a). The UVTA defines "creditor" as "a person who has a claim, regardless of when the person acquired the claim, together with any successors or assigns." OCGA § 18-2-71 (4). And it defines "claim" as "a right to *payment*, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." (Emphasis supplied.) OCGA § 18-2-71 (3).

Here, Silverstone's claim for fraudulent transfer was based on the alleged transfer of lots from Premier to SRG. Silverstone, however, has not established evidence that it had a "claim" against Premier for payment and was a "creditor" of Premier so as to have a cause of action under the UVTA to unwind any allegedly fraudulent transfers made by Premier. Neither Silverstone nor Connor has identified any particular "right to payment" of money from Premier, whether in the form of unpaid salary or unpaid distributions, that has not already been paid.

The only claims for monetary payment that we can identify in the record[1] alleged by Silverstone and/or Connor and against Premier directly was a claim for indemnification for $2,200 related to a separate lawsuit filed by a real estate broker during the timeframe soon after Connor was removed from his position at Premier, as well as a claim for conversion of office furniture and business records. At trial, however, the jury found against Silverstone on the indemnification claim, and Silverstone does not challenge the verdict on that indemnification claim on appeal. As to the conversion claim, the trial court granted a directed verdict in Premier's favor, and Silverstone also does not challenge that ruling as to Premier.[2] By making these rulings, the jury and the trial court conclusively determined that Silverstone does not have a "right to payment" on these claims. Even under the very liberal definitions contained in the UVTA, we cannot conclude that these claims, having now been fully heard and finally rejected by a factfinder, can constitute "claims" under OCGA § 18-2-71 (3).

---

[1] Silverstone also raised a claim for inspection of Premier's records, but that does not involve a claim involving "a right to payment."

[2] Although Silverstone challenges the directed verdict on this claim as to SRG, it does not challenge the verdict as to Premier.

16

Because the evidence was insufficient to establish that Silverstone was a "creditor" of Premier, the evidence was insufficient to support a cause of action for a fraudulent transfer. Accordingly, we reverse the jury's verdict on Silverstone's fraudulent transfer claim. Because Premier did not move for a directed verdict below on this basis, we must remand for a new trial so that Silverstone and Connor "have an opportunity to address the problems with [their] case on remand." *Aldworth Co., Inc. v. England*, 281 Ga. 197, 201 (2) (637 SE2d 198) (2006).

3. Premier next argues that the jury's award of attorney fees to Silverstone and Connor was improper because the jury did not award any underlying compensatory damages against Premier on Silverstone's claims and because the trial court failed to segregate the amount of attorney fees among Silverstone's successful and unsuccessful claims. We agree that the attorney fee award is void due to the lack of an underlying claim to support it.

Here, Silverstone alleged two bases[3] for claiming attorney fees from Premier: (1) a provision in Premier's operating agreement which allows "the prevailing party" to recover reasonable fees, costs, and expenses "[i]n any dispute between or among

[3] Silverstone also sought attorney fees pursuant to its settlement agreement with Schmidt and SRG for having to sue to enforce the agreement, but that provision would not implicate any claims against Premier.

17

the Company and one or more of the Members;" and (2) OCGA § 13-6-11, which allows the jury to award attorney fees if "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense[.]" "OCGA § 13-6-11 does not create an independent cause of action." (Citation omitted.) *Ga. Dept. of Corrections v. Couch*, 295 Ga. 469, 474 (2) (a) (759 SE2d 804) (2014). Instead, an award of attorney fees under this section is considered to be "an additional element" of the compensatory damages that the jury may award as part of a substantive claim for relief. (Citation omitted.) Id. As a result, the statute allows an award of attorney fees only to a "prevailing party," which "means a party that has obtained an award of damages or other affirmative relief on its underlying claims." *Scarborough v. Hunter*, 293 Ga. 431, 439 (3) (746 SE2d 119) (2013).

Here, Silverstone was not the "prevailing party" against Premier. The jury found in favor of Premier on all of its claims against Silverstone, and Silverstone did not prevail against Premier on any of its counterclaims apart from the request for attorney fees. While Silverstone did prevail on some of its claims against other parties, the jury solely awarded attorney fees against Premier. Because Silverstone was not a prevailing party against Premier, the attorney fee award cannot be

18

supported under either OCGA § 13-6-11 or the operating agreement's attorney fees provision.

Silverstone argues that Premier has failed to preserve this enumeration for appellate review because it did not present this argument below, but "[a]n award of attorney fees but no other damages or affirmative relief under a statute that authorizes an award of attorney fees to the prevailing party is illegal and void, not merely erroneous and voidable." (Punctuation omitted.) *Benchmark Builders, Inc. v. Schultz*, 289 Ga. 329, 330 (1) (711 SE2d 639) (2011). And in a civil case, when the jury returns a void verdict, "no valid judgment can be entered thereon. A judgment entered on such a verdict will be set aside." (Citation and punctuation omitted.) *Anthony v. Gator Cochran Constr., Inc.*, 288 Ga. 79 (702 SE2d 139) (2010). Therefore, we cannot "rely[] on waiver to affirm the award" because "courts are without authority to breathe life into void judgments." (Citation omitted.) *Benchmark Builders, Inc.*, supra, 289 Ga. at 330 (1). We must therefore reverse the award of attorney fees to Silverstone and the trial court's resultant judgment offsetting the amount of damages owed to Premier. See *Gardner v. Kinney*, 230 Ga. App. 771, 772 (498 SE2d 312)

(1998) (reversing jury's award of attorney fees when the jury awarded no other affirmative relief against that party).[4]

4. Premier next argues that the trial court misinterpreted the jury's verdict when it concluded that the jury only intended to award a single amount of $192,107.87 for its three claims of breach of contract, unjust enrichment, and breach of fiduciary duties instead of intending to award two separate awards of $192,107.87 for the breach of contract and breach of fiduciary duty claims. The evidence at trial, however, supports the trial court's interpretation of the jury's verdict, and we uphold the judgment amount of $192,107.87 in damages.

"[U]nder OCGA § 9-12-4, verdicts shall have a reasonable intendment and shall receive a reasonable construction. They shall not be avoided unless from necessity. Thus, the presumptions are in favor of the validity of verdicts, and if possible a construction will be given which will uphold them." (Citations and punctuation omitted.) *Surles v. Cornell Corrections of California, Inc.*, 290 Ga. App. 260, 265 (1) (659 SE2d 683) (2008). When interpreting an ambiguous verdict, the trial court may "examin[e] the trial record to determine whether it plainly appears

---

[4] In light of our conclusion on this point, we do not reach Premier's arguments that the evidence supporting the amount of the fees was insufficient.

20

upon the face of the record what the jury intended[.]" (Citation omitted.) Id. at 266 (1) n.5.

Premier's claims for breach of contract, unjust enrichment, and breach of fiduciary duty against Connor and Silverstone were all based on their refusal to tender the proceeds from the final three sales of the Village Crossing lots. In so doing, Premier presented evidence that the total net proceeds from the final three sales was $143,556.41, which was increased to $192,107.87 once interest was taken into account. Premier did not submit evidence of further damages on these claims. Indeed, Premier argued to the jury that it should award $192,107.87 in damages for the breach of contract claim and then award damages on the breach of fiduciary duty claim as follows:

> Now, I'm not suggesting that you double up. *We're not asking to recover $192,000 twice,* but I think that you can conclude that there was a breach of fiduciary duty by Connor and Silverstone and award some amount, $1,000, $10,000, whatever you think is a reasonable award[.]

Given Premier's argument to the jury, the nature of the three claims, and the lack of contrary evidence to establish that the jury actually intended to award $192.107.87 twice to Premier, we conclude that the trial court did not err when it interpreted the jury's verdict.

21

5. Premier finally argues that the trial court erred by granting Silverstone's motion for a supersedeas bond without holding a hearing as requested by Premier. As Premier acknowledges, however, the trial court's order granting a supersedeas bond is not in the appellate record. While the appellants say that the parties stipulated that the record should be supplemented, no motion to supplement was ever filed with this Court. "An appellant has the burden of providing us with a sufficient record to enable us to review the enumerations of error raised. When the error is shown only in the appellant's brief and not by the record, we must assume that the trial court's rulings were correct." (Citation omitted.) *Austell Healthcare, Inc. v. Scott*, 308 Ga. App. 393, 395 (1) (707 SE2d 599) (2011). Without the order, there is nothing in the record that shows that the trial court even granted a supersedeas bond, much less that it did so erroneously. See *Mays v. Ed Voyles Chrysler-Plymouth, Inc.*, 255 Ga. App. 357, 358 (2) (565 SE2d 515) (2002) ("Factual assertions contained in a party's brief are not evidence unless supported by the record.") (citation omitted). Accordingly, this enumeration of error presents us with nothing to review.

*Case No. A23A0330*

22

6. In their cross-appeal, Silverstone and Connor first argue[5] that the trial court erred by granting summary judgment on their claim for fraudulent transfer against SRG based on the transfer of the lots from Premier to SRG. For the reasons stated above in Section 2, supra, however, we have determined that Silverstone and Connor failed to present sufficient evidence to show that they were "creditors" of Premier such that they could challenge the transfer of the lots from Premier to SRG under the UVTA. While we have granted a new trial so that Silverstone and Connor now "have an opportunity to address the problems with" the evidence establishing whether they were creditors of Premier, *Aldworth Co., Inc.*, supra, 281 Ga. at 201 (2), that rule does not extend to allow us to revive claims that have already been resolved. Therefore, we have no cause to disturb the trial court's ruling on this claim.

7. Silverstone and Connor also argue that the trial court erred by granting a directed verdict on their claim for conversion against SRG to recover various pieces of office furniture. We agree.

> A conversion results when, without authority, a party exercises the right of ownership over, assumes dominion over, or appropriates personal property belonging to another party, in hostility of that other party's rights. To establish a conversion claim, a plaintiff must demonstrate that

[5] We note that no party filed a response brief in Case No A23A0330.

(1) he or she owns title to or has the right to possess the personal property at issue; (2) the defendant actually possesses the property; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return it.

(Citation omitted.) *Rubenstein v. Palatchi*, 359 Ga. App. 139, 142 (1) (857 SE2d 81) (2021).

Here, Connor testified that, as part of a settlement agreement with SRG, he was allowed to collect office furniture and business records that were in his office after he was removed as a member. The settlement agreement specifically identified "2 espresso colored desks and credenzas and 2-5 drawer metal lateral file cabinets as we all as Commor/SR's business records." SRG placed some items on the loading deck for Connor to retrieve. Connor collected the furniture but realized that SRG had not provided the correct items. Connor returned the items to SRG and demanded that it provide him with the correct items, but it refused to do so. Although SRG presented conflicting evidence as to what transpired, the evidence was nevertheless sufficient to establish a jury question on Silverstone's and Connor's claim for conversion. See *Thomas v. Statewide Beverage Equip., Inc.*, 152 Ga. App. 293, 294 (2) (262 SE2d 575) (1979) (jury question was presented on conversion claim when the property owner testified that he went to collect various furniture items to which he was entitled

24

but was refused the property). Accordingly, we reverse the trial court's grant of a directed verdict on this claim.

8. Because we reverse the directed verdict on Silverstone's and Connor's conversion claim, we also reverse the directed verdict on Silverstone's derivative claim for attorney fees. While Silverstone and Connor also ask us to resuscitate their claim for punitive damages, they represented to the trial court at trial that their claim for punitive damages was "tied to the fraudulent transfer claim" and that they were "not seeking punitive damages on the conversion claim." Thus, because we only reverse the directed verdict on the conversion claim, we decline to revive the punitive damages claim.

To summarize our rulings in these two cases, we conclude that the evidence at trial was insufficient to sustain the verdict in favor of Silverstone's fraudulent transfer claim, and we conclude that the trial court erred by granting a directed verdict on Silverstone's conversion claim, so we reverse the verdicts on these claims and remand for a new trial. We also conclude that the jury's verdict awarding attorney fees to Silverstone was improper and must be reversed.

We otherwise affirm the jury's verdict and the trial court's related orders.

*Judgment affirmed in part and reversed in part and case remanded in Case No. A23A0280. Judgment affirmed in part and reversed in part in Case No. A23A0330. Mercier and Hodges, JJ., concur.*