## REDMOND & COMPANY *v.* ATLANTA AND BIRMINGHAM AIR-LINE RAILWAY.

1. Where one has an unliquidated demand against another, and the debtor sends a check to his attorney, together with a receipt to be signed by the creditor, and the latter receives from the attorney the check, though protesting that a much larger sum is due him, and signs a receipt under seal, which contains the stipulation that in consideration of the amount of the check, or voucher, the debtor releases the creditor "from all claims and demands whatsoever for or on account of the said contract, or for work and labor done and for materials furnished by us

in connection with the same," the receiving and retaining of the sum offered and the signing of the receipt becomes an executed agreement, and constitutes a good accord and satisfaction, and as such is binding upon the creditor holding the demand, although he entered upon the receipt, at the time of signing the same or prior thereto, the letters "E. & O. E.," which mean "errors and omissions excepted."

2. Even if the amount tendered and accepted was the amount fixed by the estimate of the debtor's engineer, and such estimate was incorrect and the result of a mistake or fraud, the creditor would not be entitled to retain the proceeds of the check received upon the terms above set. forth, and sue for the remainder of his unliquidated demand.  Before he would be entitled to maintain such an action, it would be necessary for him to tender back the amount received.

Argued April 23,—Decided October 4, 1907.

Complaint.  Before Judge Bartlett.  Paulding superior court. May 5, 1906.

T. B. Redmond & Co. brought suit against the Atlanta & Birmingham Air-Line Railway Co., to recover various amounts alleged to be due to the plaintiffs for work done and material furnished in the construction of a single-track railroad along sections 37, 38, 39, and 40, of defendant's line.  Both general and special demurrers were interposed by the defendant.  Some of the demurrers were overruled, and others sustained.  The plaintiffs. filed their bill of exceptions to the order sustaining certain grounds. of the demurrer; and the defendant by cross-bill excepted to the order overruling certain other grounds.  The petition alleged that the petitioners had entered into a contract, in March, 1903, with the East & West Railroad Co., to do certain work required in the construction of a single-track railroad for the latter company on the sections above mentioned.  Profert was made of said contract. It was further alleged that the Atlanta & Birmingham Air-Line Railway Co., the defendant, was formed by a consolidation of the East & West Railroad Co. and the Chattahoochee Terminal Railway, and that the defendant company had undertaken the construction of said sections of railroad and assumed the place of the East & West Railroad Co. under the contract with petitioners, and became liable to petitioners in the same manner as the East & West R. R. Co. would have been had not said substitution taken place.

The contract provided, among other things, that "All questions, differences, or controversies which may arise between the company

and the contractor, under or in reference to this agreement and specification, or its performance or non-performance, or the work to which they relate, or in any way whatever pertaining to or connected with said work, shall be referred to the engineer of the company, and his decision shall be final and conclusive as to both parties. . . And it is distinctly understood and agreed between the parties that the work under this contract shall, at every stage of its progress from beginning to end, be subject to the directions, inspection, and acceptance of the engineer, who shall determine without appeal what, in any case, a fair construction of the contract requires to be done by either party, and whose measurements, classifications, and estimates, monthly or final, shall be absolutely conclusive upon both parties." The petition alleges that the final estimate, which was furnished to them about the 31st day of August, 1904, was erroneous and fraudulent in various particulars, and failed to allow petitioners the amount to which they were entitled for work done and material furnished. It further appears from the petition and amendments thereto, that the final estimate was presented to petitioners, together with a voucher for the amount represented by said final estimate to be due them, by the attorney at law for the defendant. When the same was so presented, they protested that it was incorrect, and they were thereupon referred to the engineer of defendant, one Jones; they sought to obtain access to said Jones, but he was not in Atlanta; so they wired to him at Birmingham, Ala., as follows: "Amount of voucher tendered us to-day is not the full amount due us. . . Will accept voucher pending future adjustment of our claim." This telegram, it is alleged, was delivered to Jones; and after waiting twenty-four hours for a reply, and no reply having been received, petitioners accepted the amount shown to be due them by said final estimate, and signed the following receipt: "We acknowledge to have received from the Atlanta & Birmingham Air-Line Railway the sum of $41,664.67 in full payment for all materials furnished and for all work and labor done by us under or in connection with the contract [identifying the contract above set out]. The said contract being now completed and the said amount being the final payment to us under the same; and we do hereby release the said Atlanta & Birmingham Air-Line Railway from all claims and demands whatsoever, for or on

account of the said contract, or for work and labor done and for materials furnished by us in connection with the same: In witness whereof, we have hereunto set our hands and seals the seventh day of October, 1904. E. & O. E."

Petitioners further allege, that, at the time said voucher was signed by them, they were in great financial distress and in the most pressing need of money, by reason of the work which they had done for the defendant, which fact was known to the defendant; that they were forced, by reason of such financial condition, to accept said sum, or await the result of protracted and expensive litigation; and that defendant took advantage of said condition of petitioners and required them to sign said receipt. By amendment it was further alleged, that, before accepting the said sum of money and signing said receipt, plaintiffs entered thereon the letters "E. & O. E.," being an abbreviation of the words, "Errors and omissions excepted;" that said abbreviation is of well-known meaning in the business world, the purpose being to call in question the correctness of the statement, account, or receipt, and indicate that the correctness of such statement, account, or receipt is not admitted; and that the defendant took from the plaintiffs said receipt and turned over to them said voucher with full knowledge that it was indebted to them more than the sum called for by said voucher, and that the same was being received by plaintiffs only in partial settlement and subject to future adjustment.

The defendant filed general and special demurrers. The third, fourth, and fifth grounds of the general demurrer are as follows: "Because it appears by said petition that the said contract sued on has been settled and final estimates have been furnished to petitioner thereon, and payments have been made and accepted according to said final estimates and have been received by said plaintiffs on said final estimates; said settlement thus made is sought to be set aside upon the ground of fraud, but no tender is alleged to have been made, or is in said petition made to this defendant of the amount alleged to have been paid and received under said final estimate and settlement." "Because the petition sets forth no cause of action." "Because said petition shows that the said defendant hath paid said plaintiff for and on account of said work done under said contract, and that said payment was ac-

cepted by said plaintiff, and shows no sufficient reason why said payment and settlement should be set aside, or any reason why plaintiffs should be allowed to recover." The court sustained the general demurrer on the grounds just quoted, and dismissed the suit. The plaintiffs excepted.

*Peeples & Jordan* and *Smith, Berner, Smith & Hastings,* for plaintiffs, cited *Ga. R.* 81/351; 92/485; 105/223; 111/310; 120/- 901; 56/496; 30/731; 27/314; 78/568; 95/418; 49/266; 114/- 556; 51/91; 46/283; 51/624; 53/286; 50/53; Civil Code, §§ 3754, 4483, 4484; Clark, Con. 184, 189; 88 Ind. 46; 66 Miss. 584; 141 U. S. 564 (35 L. ed. 860); 94 U. S. 53 (24 L. ed. 65); 100 Miss. 249 (1 Am. R. 31); 174 Pa. St. 174 (34 Atl. 518); 13 Kan. 55; 78 Mass. 341; 25 Vt. 386; 92 Fed. 968; 178 U. S. 353 (44 L. ed. 1099); 25 Ala. 445 (60 Am. D. 530); 88 Ind. 460; 114 U. S. 554; 22 N. E. 278; 51 Pac. 410; 27 Vt. 673; Pierce, Ry. L. 382; 1 Rorer, R. 452; Moore, Arb. 99; 20 N. Y. 466; 76 Fed. 941; 49 Fed. 708; 38 Pac. 763; 137 Fed. 369; 138 U. S. 185 (34 L. ed. 917); 31 So. 109.

*King, Spalding & Little* and *W. E. Spinks,* for defendant, cited (omitting cases cited in opinion), Civil Code, § 3735; *Ga. R.* 111/732; 51/353; 58/479; 71/860; 97/560; 109/666; 115/864; 55/485; 28/38; 98 U. S. 430; 12 Wall. 232; 13 Wall. 35, 379; 142 U. S. 43; 114 U. S. 549; 2 Pom. Eq. Jur. § 892; 74 Fed. 707.

BECK, J. (After stating the facts.) It appears from the petition in this case that the plaintiffs accepted a certain sum tendered by the other party as the full amount due under the contract, though protesting that it was an improper amount and less than they were entitled to, and released the defendant, in consideration of such payment, from all further liability under the contract sued on. And it is insisted by defendant's counsel that this constituted an accord and satisfaction, and that under the Civil Code, § 3735, the plaintiffs are concluded, the agreement having been actually executed by the payment of the money. Defendant insists that the payment and acceptance of the money, under the facts set forth in the petition, under the provisions of the code section just cited, is binding upon the plaintiffs as an accord and satisfaction, whether the demand of the latter was liquidated or unliquidated. Under the view that we take of the questions made by the record, it is not necessary to decide whether

that contention be sound, or whether §3735 of the code is so modi-
fied by the provisions of §3734, when the two sections are con-
strued together, that if plaintiffs' demand was for a liquidated
amount the acceptance of the amount embodied in the receipt
constituted accord and satisfaction; for in this case the demand
was unliquidated. The contrary view, urged by the plaintiffs, is
not countenanced by the authorities when applied to their case as
stated by them. "A debt or demand is liquidated, when agreed
on by the parties, or fixed as to the amount, by the operation of
law." *Hargroves* v. *Cooke,* 15 *Ga.* 321. "The word 'liquidated,'
in the sense of the rule that payment of a lesser sum is a dis-
charge of the remainder where the amount in dispute is unliqui-
dated, but that it is not a discharge where it is liquidated, means
that the amount due has been ascertained and agreed on by
the parties or fixed by operation of law. The rule does not
apply where there is a bona fide dispute as to the amount actually
due. Treat *v.* Price, 66 N. W. 834, 836, 47 Neb. 875." "A de-
mand is not liquidated, even if it appears that something is due,
unless it appears how much is due; and when it is admitted that
one of two specific sums is due, but there is a general dispute as
to which is the proper amount, the demand is regarded as 'unliq-
uidated' within the meaning of the term as applied to the sub-
ject of accord and satisfaction. Lestienne *v.* Ernst, 39 N. Y.
Supp. 199, 200, 5 App. Div. 373 (citing Nassoiy *v.* Tomlinson,
148 N. Y. 326, 331, 42 N. E. 715); Ives *v.* Jefferson County
Sup'rs, 18 Wis. 166, 168; Clark *v.* Dutton, 69 Ill. 521, 523; Green-
lee *v.* Mosnat, 90 N. W. 338, 339, 116 Iowa, 535 (citing Nassoiy
*v.* Tomlinson, 148 N. Y. 326, 42 N. E. 715)." The two latter
quotations were taken from 5 Words & Phrases, 4174.

A brief reference to some of the items of the account upon
which the plaintiffs' demand in this suit is based will produce the
conviction at once that it was unliquidated. One of the items al-
leged to be due to petitioners was for removing a certain number
of cubic yards of dirt, which "petitioners show that they were
compelled to handle in a manner not contemplated by the contract
and not provided for by the contract, and that said work was
reasonably worth the sum at which it has been charged up" in the
petition. Another large item was for handling "wet excavation,"
and "petitioners show that no contract price was fixed for hand-

ling wet excavation, and that a customary and reasonable allow-
ance for the same would have been $1.50 per cubic yard," and
that only seventy cents per cubic yard "was allowed for the same
according to the final estimate of the defendant." And "peti-
tioners further show that the fills or slides in the tunnel amounted
to 3,215 cubic yards, and that $3.00 per cubic yard was a reason-
able price for handling this work, and petitioners show that no
price was fixed in the contract for the payment of the same, but
the defendant company arbitrarily undertook to fix the price at
$1.25 per cubic yard." Another item was for lumber which it
is alleged was improperly rejected by the defendant's engineer. It
is unnecessary to enumerate all of the items charged in the peti-
tion; as it sufficiently appears, from what has been shown, that
the indebtedness due to the plaintiffs by the defendant was not
ascertained or agreed upon by the parties, and can not be regarded
as "liquidated" within the meaning of the term as applied to the
subject of accord and satisfaction. The mere fact that the de-
fendant acceded to the estimate of the engineer, and was willing
to pay that amount without attacking it, and tendered that amount
with the condition embodied in the receipt or release, did not have
the effect to render the plaintiffs' unliquidated demand a liquidated
one; it did not render it one "ascertained and agreed upon by the
parties or fixed by operation of law." In the case of Chicago
Railway Co. v. Clark, 178 U. S. 353, it was said, "The proposi-
tion is that the release was given without consideration, and that
Clark was entitled to recover so far as the items of $40,000 and
$9,558.63 were concerned, on the principle that where a liquidated
sum is due, the payment of a less sum in satisfaction thereof,
though accepted as satisfaction, is not binding as such, for want
of consideration. Cumber v. Wane, 1 Strange, 426. The rule
therein laid down has been much questioned and qualified. God-
dard v. O'Brien, 9 Q. B. Div. 37; Sibree v. Tripp, 15 M. & W. 23;
Couldery v. Bartrum, 19 Ch. D. 394; Foakes v. Beer, 9 App. Cas.
605; Notes to Cumber v. Wane in Smith's Leading Cases, vol. 1,
606; 12 Harvard Law Review, 521. The result of the modern
cases is that the rule only applies when the larger sum is liqui-
dated, and when there is no consideration whatever for the sur-
render of part of it; and while the general rule must be regarded
as well settled, it is considered so far with disfavor as to be con-

fined strictly to cases within it. . . And the cases are many in which it has been held that where an aggregate amount is in dispute, the payment of a specified sum conceded to be due, that is, by including certain items but excluding disputed items, on condition that the sum so paid shall be received in full satisfaction, will be sustained as an extinguishment of the whole. In Fuller *v.* Kemp, 138 N. Y. 231, where certain items of an account were disputed, and certain items were undisputed, and defendant paid plaintiff only the amount of the undisputed items, the court held that the dispute over certain of the items made the account an unliquidated one, and that plaintiff, by accepting the amount of the undisputed items with notice that it was sent as payment in full, was precluded from recovering the balance of his demand."

The demand of the plaintiffs being unliquidated, it necessarily follows that the tender or offer of the sum mentioned in the receipt, upon the terms recited therein, was in effect an accord and satisfaction. By the acceptance on the part of the plaintiffs of the sum named, and the signing of the receipt containing the conditions upon which it was offered, the agreement to accept less than the amount of the unliquidated demand became executed; and when the plaintiffs attempted to collect the balance of the demand, the defendant could plead the executed agreement as an accord and satisfaction. And this conclusion is not affected by the fact that at the time of signing said receipt the plaintiffs entered thereon the letters "E. & O. E.," which were abbreviations for the words "Errors and omissions excepted." It appeared by said petition, that said voucher was presented to the plaintiffs by J. J. Spalding, attorney at law for defendant; that the said receipt was signed and delivered to the said Spalding; that the petitioners were informed in effect by the said Spalding, prior to accepting said voucher and cashing the same, that he had no authority and could not give them any relief in regard to their complaints as set forth in their petition and amendments thereto; and that, without other or further communication from any agent, officer, or attorney of the defendant, the said plaintiffs received the amount of said voucher and signed the said receipt. "Where a certain sum of money is tendered by a debtor to a creditor on the condition that he accept it in full satisfaction of his demand, the sum due being in dispute, the debtor must either refuse the

tender or accept it as made, subject to the condition. If he accept it, he accepts the condition also, notwithstanding any protest he may make to the contrary. A., being indebted to B. in an uncertain amount, sent to the C. Bank the amount which A. conceded to be due, with instructions to pay the sum to B., but only in full settlement and on his signing a receipt to that effect. B., protesting that more was due, accepted the money, and signed the receipt, but caused the bank to send back, accompanying the receipt, a letter declaring that he only received the money on account, and not in settlement. *Held,* that, by receiving the money, he had accepted the condition on which it was tendered, and that his protest availed nothing. *Held,* further, that the terms of the receipt, and the refusal of the bank to pay the money except upon his signing it, were notice to him that the bank had no authority to pay it except on the condition that it should be received in full settlement." Treat *v.* Price, 66 N. W. 835. "When a party makes an offer of a certain sum to settle a claim, when the sum in controversy is open and unliquidated, and he attaches to his offer the condition that the sum, if taken at all, must be received in full satisfaction of the claim in dispute, and the party receives the money, he takes it subject to the condition attached to it, and it will operate as an accord and satisfaction, even though the party, at the time of receiving the money, declares that he will not receive it in that manner, but only in part payment of his debt as far as it goes." McDaniels *v.* Lapham, 21 Vt. 222. "The mere act of receiving the money is an agreement to accept the same on the conditions upon which it was offered." McDaniels *v.* Bank of Rutland, 29 Vt. 230, 70 Am. Dec. 406.

The claim that this release is not binding, because the sum named in the final estimate was fraudulently fixed, can not avail the plaintiffs. As plaintiffs themselves did the work and were on the ground, they were in possession of all data necessary to determine whether the engineer's estimate was correct or incorrect, and if incorrect, to what extent, and whether his conduct was fair or unfair. The petition shows not only opportunity of knowledge and notice, but actual knowledge of the facts by which they could have made good their present complaint that the final estimate was incorrect, unfair, and fraudulent. That being the case, they did not sign the receipt in ignorance of the fraud

upon the part of the engineer, or of the mistake made by him. And having so signed the release with such notice, and accepted payment, they are now bound by the same. The plaintiffs had full opportunity for knowing the truth; and if they did not ascertain it with such opportunity to inform themselves, it was because of negligence upon their own part, and equity will not now relieve them of its consequences. "It is true, courts of equity will grant relief for ignorance as well as for a mistake of fact; but the principles on which relief is granted in those cases are very different. When the party has acted in ignorance of facts merely, courts of equity will never afford relief where actual knowledge could have been obtained by the exercise of due diligence and inquiry. That was the very point determined in the case of Penny *v.* Martin, 4 Johns. Ch. 567. Justice Story has also observed, 1 Eq. Jur. sec. 146, and note, that 'it is not sufficient that the fact is material; but it must be such that he could not by reasonable diligence get knowledge of when he was first put upon inquiry. For if by such reasonable diligence he could have obtained knowledge of the fact, equity will not relieve him, since that would be to encourage culpable negligence.'" McDaniels *v.* Bank of Rutland, *supra.*

But even if this were not the case, we think the contention of the defendant company is sound when it insists that the plaintiffs, having received the amount of money tendered by the defendant in settlement of this claim, and having executed a full release, can not set aside the same without having first, as a condition precedent to filing the suit, tendered back the money received.

The plaintiffs received the sum of $41,664.67; they received it on terms and conditions stated in the receipt signed by them; and they ought not to be permitted to retain it and repudiate an executed agreement. The case as presented by the record makes applicable the language of Mr. Justice Cobb in the case of *Hamilton* v. *Stewart,* 105 *Ga.* 300: "The retention of the amount forwarded, declared to be in full settlement of the claim held by the person to whom it is sent, coupled with a failure within a reasonable time to decline the proposition, will raise a conclusive presumption of an acceptance of the terms and conditions set forth in the proposal. While of course a party can not be bound by a settlement unless he assents to its terms, still this assent may

be implied from the circumstances; and conduct inconsistent with a refusal would raise a presumption of assent, upon which the other party would have a right to act. Nothing could be clearer than the proposition that where one person delivers to another property, to be retained upon a condition stated, the party receiving it can not retain the property and repudiate the condition." See also the cases of *East Tennessee Ry. Co.* v. *Hayes,* 83 *Ga.* 558, and *Walker* v. *Wadley,* 124 *Ga.* 282. Again, it was held in the case of *Strodder* v. *Southern Granite Co.,* 94 *Ga.* 626, "Where an accord and satisfaction is fully executed, the party receiving the money from the other can not rescind on the ground of fraud, . . without refunding or offering to refund the money which was the fruit of the accord and satisfaction. If any exception to this general rule results from inability, by reason of poverty, to restore the money, it is only when the fraud is not discovered . . until after the money has been expended, or otherwise put beyond the power and control of the plaintiff. To use and appropriate the money with knowledge of the imposition would be a ratification of the settlement." We do not think that this ruling is in conflict with the case of *Robinson* v. *Leatherbee,* 120 *Ga.* 901, as it does not appear in that case that the money was tendered on condition that it should be accepted in full settlement of the account; but if it is in conflict, then the case of *Robinson* v. *Leatherbee* must yield to the earlier decisions which are authority for the ruling here made.

It follows from the foregoing that the court did not err in sustaining the general demurrer and dismissing the action.

*Judgment affirmed on the main bill of exceptions. Cross-bill of exceptions dismissed. All the Justices concur.*