A08A0366. TOM BROWN CONTRACTING, INC. v. FISHMAN et al.

(658 SE2d 140)

BLACKBURN, Presiding Judge.

Following a trial on breach of fiduciary duty and breach of contract claims against an escrow agent, the jury awarded Tom Brown Contracting, Inc. ("TBC") the deposit TBC had entrusted to the escrow agent when TBC ordered certain flooring that was later never received. Finding no evidence supported either claim, the trial court entered a directed verdict against TBC and in favor of the escrow agent on both claims, which TBC now appeals. We reverse, holding that some evidence supported both claims.

"[I]n considering a ruling on a motion for a directed verdict, the evidence must be construed most favorably to the party opposing the motion." *Crosby v. Kendall.*[1] A court may grant a directed verdict "only when no conflict exists in the evidence and the evidence presented, with all reasonable inferences therefrom, demands a

---

[7] *Estate of Sam Farkas, Inc. v. Dougherty County School System*, 178 Ga. App. 135 (342 SE2d 501) (1986).

[1] *Crosby v. Kendall*, 247 Ga. App. 843, 847 (2) (545 SE2d 385) (2001).

particular verdict." (Punctuation omitted.) *Bienert v. Dickerson.*[2] Thus, on appeal of a grant of a directed verdict, we apply the "any evidence" standard, which requires that we reverse if some evidence supported a jury verdict in favor of the nonmovant. Id.

Construed in favor of the verdict, the evidence shows that in May 2003, a flooring supplier entered into a written "Escrow Agreement" with Fishman & Company (an accounting firm), pursuant to which the supplier's customers would pay monies (owed to the supplier) directly to Fishman & Company as an escrow agent, who in turn would use the escrowed money to pay business-related debts of the supplier. The parties orally modified this agreement, which had no merger clause nor any restrictions on modifications, to provide that Fishman & Company would also receive deposits from customers on pending orders, which deposits it would hold in escrow until it had received confirmation that the promised goods had been shipped. Only after it received this confirmation could Fishman & Company then use the deposit to pay debts of the supplier; otherwise, it held the funds for the benefit of the customer. Fishman & Company was aware that the supplier publicized this arrangement so as to persuade customers to forward deposits to Fishman & Company.

In August 2003, TBC ordered from the supplier $105,000 worth of maple flooring for a construction project. Although deposits were unusual in the industry, the supplier required TBC to make a deposit of $35,000 on the order; to assuage any concerns about the deposit, the supplier assured TBC the money was safe since TBC would send the money directly to Fishman & Company, who pursuant to the escrow agreement would hold it in escrow until the promised flooring was shipped. Based on this representation, TBC forwarded the $35,000 to Fishman & Company, who deposited the money into the escrow account. The maple flooring was shipped.

The architect on the construction project rejected the maple flooring as defective, and the flooring was returned to the supplier. The supplier agreed to replace the defective flooring with an equivalent amount of bamboo flooring and to credit this new order with the $35,000 deposit, but the supplier required an additional deposit from TBC of $42,500 before such would be shipped. Based on the same assurance that Fishman & Company would hold this second deposit in escrow until the bamboo flooring was shipped, TBC forwarded the $42,500 to Fishman & Company, which Fishman & Company deposited into the escrow account on October 10, 2003. Although the promised bamboo flooring was to be shipped to TBC on October 20, such did not occur. Nevertheless, on October 20, Fishman & Company

---

[2] *Bienert v. Dickerson*, 276 Ga. App. 621, 623 (2) (624 SE2d 245) (2005).

began using TBC's $42,500 deposit to pay the supplier's debts, despite e-mail correspondence it received from the supplier and TBC about the lack of the promised shipment. By the end of October, Fishman & Company had reduced the escrow account to less than $7,000. TBC eventually received only a small portion of the promised bamboo flooring and had to purchase the missing flooring from another supplier.

TBC approached Fishman & Company for a return of its escrow funds, but the money was gone, and Fishman & Company had ceased serving as the escrow agent for the supplier. TBC sued Fishman & Company and its principal for the $42,500 deposit plus interest, asserting claims of breach of fiduciary duty and breach of contract.[3] The jury awarded this amount to TBC, which verdict the trial court overturned when it granted defendants' motion for a directed verdict (which it had taken under advisement during the trial). This appeal followed.

1. TBC first argues that the trial court erred in granting a directed verdict on its breach of fiduciary duty claim. We agree.

"A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." (Punctuation omitted.) *Bienert*, supra, 276 Ga. App. at 623 (2). The trial court held that no fiduciary duty existed. Specifically, the trial court found that because the written escrow agreement contained no term requiring Fishman & Company to hold customer deposits in escrow until receiving confirmation of shipping, Fishman & Company owed no fiduciary duty to TBC to hold its deposit in escrow.

This finding ignores, however, the evidence that (i) the supplier and Fishman & Company later added this term to the agreement, which term Fishman's principal testified it carefully followed, and (ii) Fishman & Company's knowledge that the supplier was advertising this term to its customers to assure them that deposits sent to Fishman & Company would be held in escrow until shipping occurred. Such evidence of oral terms and conforming conduct suffice to demonstrate that this term created an escrow agreement binding on Fishman & Company. See *Redmond & Co. v. Atlanta & Birmingham Air-Line R.*[4] (assent to agreement may be implied from circumstances and conduct of parties). See also *Crosby*, supra, 247 Ga. App. at 846

---

[3] TBC actually asserted two additional claims for civil conspiracy and negligent misrepresentation, but during the trial the trial court entered a directed verdict on these counts, which ruling TBC has not appealed. TBC also sought punitive damages, which the jury declined to award.

[4] *Redmond & Co. v. Atlanta & Birmingham Air-Line R.*, 129 Ga. 133, 142-143 (58 SE 874) (1907).

(1) (instructions to escrow agent, which were not part of any formal agreement, created fiduciary duties in favor of party paying money to escrow agent, the breach of which duties gave rise to a cause of action against the escrow agent). Cf. *Fickling & Walker Co. v. Giddens Constr. Co.*[5] (once aware of the terms of the escrow arrangement, the escrow agent receiving a deposit must act in accordance with his entrusted authority); *Roberts v. Porter, Davis, Saunders & Churchill*[6] ("[t]itle of the escrowed property remains in the depositor who surrenders his property to the third party, until all conditions of the escrow are accomplished or it is abandoned and he or another receives the property from the depository") (punctuation omitted).

> To establish the fiduciary obligations of an escrow, the person with whom the escrowed property is placed must, by mutual consent of both parties, be made the agent of both parties and clothed with authority to deliver the property to one party or the other on the happening of some future event.

*Threatt v. Rogers.*[7] Here, an escrow agreement binding on Fishman & Company arose once it executed the written escrow agreement with the supplier, which agreement was then modified to include a term requiring Fishman & Company to hold customer deposits in escrow until the promised materials were shipped. This term, which was publicized with Fishman & Company's knowledge to customers of the supplier, made Fishman & Company the fiduciary agent of both the customer and the supplier and clothed it with the authority (i) to use the deposit for the benefit of the supplier if the promised goods were shipped, or (ii) to return the deposit to the customer if the goods were not shipped. Cf. *Fulton Land Co. v. Armor Insulating Co.*[8] Failure to return the deposit to the customer as required subjected Fishman & Company to liability to that customer for breach of fiduciary duty. See *Carter v. Turbeville.*[9]

Accordingly, the trial court erred in finding that defendants owed no fiduciary duty to TBC and in concluding that the elements of a breach of fiduciary claim were not shown. The grant of a directed verdict on this claim is reversed.

---

[5] *Fickling & Walker Co. v. Giddens Constr. Co.*, 258 Ga. 891, 896 (1) (b) (376 SE2d 655) (1989).

[6] *Roberts v. Porter, Davis, Saunders & Churchill*, 193 Ga. App. 898, 901 (1) (389 SE2d 361) (1989).

[7] *Threatt v. Rogers*, 269 Ga. App. 402, 405 (2) (604 SE2d 269) (2004).

[8] *Fulton Land Co. v. Armor Insulating Co.*, 192 Ga. 526, 527 (1) (15 SE2d 848) (1941).

[9] *Carter v. Turbeville*, 90 Ga. App. 367, 371 (1) (a) (83 SE2d 72) (1954).

2. The trial court also erred in holding that TBC failed to show the elements of a breach of contract claim. OCGA § 9-2-20 (b) provides: "The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." *Northen v. Tobin*[10] explained that such "[a] third party beneficiary contract is one in which the promisor engages to the promisee to render some performance to a third person." (Punctuation omitted.) For the third party to have standing to enforce the contract, "it must clearly appear that one party to the contract promised another party to the contract to render some performance to the nonparty to the contract. Further, it must appear that both parties to the contract intended that the contract benefit the nonparty." *Taylor v. Americas-Mart Real Estate.*[11]

Here, Fishman & Company agreed to render a service to the supplier's customers who forwarded a deposit to Fishman & Company: Fishman & Company promised to hold those funds in escrow until shipping of the promised materials occurred or to return those funds to the customer if shipping did not occur. There is no doubt that this provision of the escrow agreement was intended to benefit the supplier's customers who entrusted those deposits to Fishman & Company, as it would appear that neither the supplier nor Fishman & Company would benefit from a return of the escrowed deposit to the customer. Accordingly, the trial court erred in directing a verdict on TBC's breach of contract claim that was based on its status as a third-party beneficiary of the escrow agreement.

We reverse the trial court's entry of a directed verdict on TBC's breach of fiduciary duty and breach of contract claims. The trial court should enter judgment on the jury's verdict.

*Judgment reversed. Miller and Ellington, JJ., concur.*

DECIDED FEBRUARY 1, 2008 —
RECONSIDERATION DENIED FEBRUARY 14, 2008

*Kitchens & New, Jeffery M. Cleghorn*, for appellant.
*Leonard L. Franco, Kenneth I. Sokolov*, for appellees.

---

[10] *Northen v. Tobin*, 262 Ga. App. 339, 344 (2) (b) (585 SE2d 681) (2003).
[11] *Taylor v. AmericasMart Real Estate*, 287 Ga. App. 555, 557-558 (1) (a) (651 SE2d 754) (2007).