In re **BUCKHEAD OIL COMPANY, INC.**, Debtor.

**Tamara Miles Ogier, as Trustee, Plaintiff,**

**v.**

**Jeremy C. Steele, Justin K. Steele and Thomas Jerry Steele, Defendants.**

Bankruptcy No. 08–72829–WLH.
Adversary No. 10–6301–WLH.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 21, 2011.

Allen Rosenfeld, William L. Rothschild, Ellenberg, Ogier, Rothschild & Rosenfeld, Atlanta, GA, for Plaintiff.

John A. Christy, Schreeder, Wheeler & Flint, LLP, Atlanta, GA, for Defendants.

### ORDER GRANTING TRUSTEE'S FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT

WENDY L. HAGENAU, Bankruptcy Judge.

Tamara Miles Ogier ("Trustee") has filed her Motion for Partial Summary Judgment ("Motion") [Docket No. 6], seeking relief with respect to Proof of Claim Nos. 21, 23, 24 and 25, which claims were filed by the Defendants. Prior to the filing of the Trustee's Motion, the Defendants raised, among other affirmative defenses, that service of process was insufficient as to at least one of the Defendants. [Docket No. 4]. Thereafter, the Trustee filed a Motion to Strike the Motion Under Fed.R.Civ.P. 12(i) to Decide the Insufficiency of Service of Process Defense. [Docket No. 5]. The Trustee's Motion to Strike was set for a hearing on September 30, 2010.

Prior to the hearing, the parties entered into a Consent Order stating that the Trustee's Motion to Strike was resolved. [Docket No. 7]. The Consent Order further provided that the insufficiency of service of process defense was waived as to Jeremy C. Steele and Thomas Jerry Steele and

remained applicable to Justin K. Steele. *Id.* It further stated that the Trustee was to promptly serve interrogatories on the Defendants seeking information needed for proper service and upon receipt of the necessary information the Trustee was to re-serve Justin K. Steele and file a corresponding certificate of service. *Id.* The parties agreed the Motion would be ripe for decision after service was perfected on Justin Steele. In the meantime, Justin Steele responded to the Motion. On November 12, 2010, the Trustee filed a Certificate of Service of Complaint on Justin K. Steele. [Docket No. 15].

The Trustee's Complaint seeks a determination of the allowance or disallowance of claims against the estate; a determination regarding the avoidance or recovery of fraudulent conveyances and a determination of the validity, extent, or priority of liens. As such, this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(B), 157(b)(2)(H), and 157(b)(2)(K) and the Court has jurisdiction over it pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

The Court has considered the pleadings and supporting documents and briefs submitted by the parties and concludes the Trustee's Motion should be granted. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

### *FACTS*

*Petition and Settlement*

The following facts are undisputed, either pursuant to the parties' pleadings or based on the record of this bankruptcy case. Debtor Buckhead Oil Company filed a petition under Chapter 11 of the United States Bankruptcy Code on July 3, 2008. Buckhead Oil was a purchaser and reseller of petroleum products. The Debtor executed a Note on June 13, 2007 in favor of Allied Financial Corporation ("Allied") in the original principal amount of $2 million. The Debtor also executed a loan and security agreement which provided that the Note was secured by virtually all assets of the Debtor. Each of the Defendants signed a guaranty of the Debtor's liability to Allied.

In the last two weeks of June 2008, it is alleged that the Debtor bought a significant amount of petroleum products from various suppliers, well in excess of the amounts usually purchased. The Debtor did not pay for those purchases as amounts came due, leading the Debtor to file a petition under Chapter 11 of the Bankruptcy Code. On July 12, 2008, Ms. Ogier was appointed Trustee in the Chapter 11 case. Thereafter, on September 2, 2008, the case was converted to one under Chapter 7, and Ms. Ogier remained Trustee.

On September 3, 2008, the Trustee filed a motion to settle with Allied [Bankr. Case No. 08–72829, Docket No. 88]. The Trustee alleged there were disputes among the Trustee, Allied and the suppliers from which the Debtor had purchased oil as to the relative rights in the oil and the proceeds thereof. Consequently, the Trustee reached a settlement with Allied and also with the suppliers regarding their relative rights. Notice of the hearing was served on the Debtor's creditors, including counsel for Defendants. [Bankr. Case No. 08–72829, Docket Nos. 90, 99]. All three Defendants objected to the proposed settlement on various grounds including (i) that Allied should not reserve any claims against these Defendants as guarantors and (ii) that nothing about the settlement should impair these Defendants' claims for subrogation to the extent of certain bank accounts which Allied had already seized and in which these Defendants claimed an

interest. [Bankr. Case No. 08–72829, Docket No. 111]. After hearing, the Court entered an order approving the settlement on October 6, 2008, which was consented to by counsel for the Defendants ("Settlement Order"). [Bankr. Case No. 08–72829, Docket No. 114].

Under the terms of the settlement, Allied released all claims against the estate of the Debtor, the Trustee or the property of the Debtor and also released the Debtor and the Codebtors (Defendants herein) "from all claims, suits and causes of action whatsoever". *Id.* On page 2, the Settlement Order states as follows:

> By this settlement, the Codebtors reserve and preserve all the Codebtor Claims that they have or may have against the Debtor, the Trustee, the Suppliers, or any other party.
>
> The Trustee disputes the validity of the Codebtor Claims on both contractual and equitable grounds. The parties hereto acknowledge and agree that this settlement and this order fully preserve the Codebtors' rights to assert the Codebtor Claims and the Trustee's defenses against those Codebtor Claims.

*Id.* Moreover, in paragraph 6(b) of the Settlement Order, the Court provided as follows: "This order does not adjudicate, release or modify either (i) any claims or defenses the Trustee may have against any or all of the Codebtors; or (ii) any claims or defenses that any Codebtors may have against the Trustee or the estate, including the Codebtor Claims." *Id.* Subparagraph (c) provides further, "This order and the Allied Settlement are without prejudice to the following: (i) the right of any nondebtor, including any Codebtor, to pursue the Codebtor Claims; or (ii) the Trustee's defenses against anyone's assertion of the Codebtor Claims or any other rights against the Estate." *Id.* Finally, the Settlement Order provided for the Trustee to immediately segregate $617,000 for the purpose of paying the Codebtor Claims, if any, which may ultimately be allowed by the Court. *Id.*

*Defendants' Claims*

The Defendants filed multiple claims, each of which will be addressed below.

*Claim No. 21:* Claim No. 21 is filed by Jeremy Steele and Justin Steele as subrogees of Allied Financial Corp. in the amount of $616,534.19. Justin Steele and Jeremy Steele each signed a guaranty of the debt of the Debtor to Allied, as referenced above, and collectively assigned to Allied a certificate of deposit in the amount of $200,000 to secure their guaranty obligations to Allied. Later, on April 29, 2008, Justin Steele and Jeremy Steele signed a security agreement with Allied, whereby they collectively assigned to Allied another certificate of deposit in the amount of $403,619.15. Justin and Jeremy Steele allege that, between August 22, 2008 and August 26, 2008, Allied applied these two certificates of deposit in the amount of $616,534.19 to pay down Allied's debt. Justin and Jeremy Steele allege that, as a result of the application of the two accounts, they have a subrogation claim against the Debtor under 11 U.S.C. § 509.

*Claim No. 23:* Claim No. 23 is filed by Thomas Jerry Steele ("Jerry Steele") in the amount of $353,918.31. Jerry Steele alleges that, of this amount, $65,034.26 is secured and the balance is unsecured. The basis for Jerry Steele's Claim No. 23 is a guaranty of certain of the Debtor's obligations to Branch Banking & Trust Company ("BB & T"), which accounts for $288,884.05 of the claim, as well as a guaranty by Jerry Steele of Debtor's Note to Allied, resulting in a claim of $65,034.26.

*Claim No. 24:* Claim No. 24 is filed by Justin Steele alone for a total amount of $970,452.50. Justin Steele's Claim No. 24

alleges $681,568.45 of the claim is secured, with the balance being unsecured. The basis for the claim is Justin Steele's guaranties of the claims of BB & T totaling $288,884.05, plus a claim for $681,568.45 based on his guarantee of the Allied Note.

*Claim No. 25:* Claim No. 25 is filed by Jeremy Steele for the total amount of $970,452.50. Jeremy Steele's Claim No. 25 alleges $681,568.45 of the claim is secured, with the balance being unsecured. The basis for the claim is Jeremy Steele's guaranties of the claims of BB & T totaling $288,884.05, plus a claim for $681,568.45 for guaranteeing the Allied Note.

*Adversary Proceeding*

The Trustee filed this adversary proceeding against Defendants on June 30, 2010. The Complaint seeks to recover damages from the Defendants on the theories of fraudulent transfer, preferences and conversion, seeks a turnover and accounting, and objects to each of the Claims outlined above. Before the Court now is only the Trustee's Motion for Partial Summary Judgment with respect to Counts 3–6 of the Complaint objecting to Claim Nos. 21, 23, 24 and 25 to the extent they seek a recovery related to the Defendants' guarantee of the Allied Note.

## *MOTION FOR SUMMARY JUDGMENT*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)[1]; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the burden of demonstrating that no dispute exists as to any material fact. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). Once this burden is met, the non-moving party cannot merely rely on allegations or denials in its own pleadings. Fed. R.Civ.P. 56(e). Rather, the non-moving party must present specific facts that demonstrate there is a genuine dispute over material facts. *Id.* Lastly, when reviewing a motion for summary judgment, a court must examine the evidence in the light most favorable to the non-moving party and all reasonable doubts and inferences should be resolved in favor of the nonmoving party. *Hairston*, 9 F.3d at 918.

In response to the Trustee's Motion for Partial Summary Judgment and Statement of Undisputed Facts, the Defendants dispute several "facts", each of which will be addressed below:

1. Whether Buckhead Oil is a third-party beneficiary and whether the guaranty was intended to benefit Buckhead Oil. This is not a factual issue, but a legal one and will be discussed below.

2. Whether Defendants are entitled to a setoff or offset against alleged damages that the Debtor is entitled to recover against them based upon their claims with respect to the Allied Note. This issue is not presently before the Court, as the Trustee has not sought summary judgment as to this point.

3. Defendants are no longer officers of Buckhead Oil. Whether the Defendants are officers of Buckhead Oil is irrelevant to the issues before the Court, as their liabilities and rights under the guaranties are not contingent upon their positions with the Debtor.

---

1. Fed.R.Civ.P. 56(c) is made applicable in adversary proceedings by Fed. R. Bankr.P. 7056(c).

4. Whether Allied held a perfected security interest in the entire "$617,000 Account". This issue is not relevant to the limited Motion for Partial Summary Judgment that is before the Court. Once the legal issue of the Defendants' entitlement to a claim is resolved, any factual issues can be further developed in discovery and litigated.

5. Defendants state there is a dispute as to the terms of the settlement agreement between Allied and the Debtor, but Defendants' statement is simply a recitation of the terms of the settlement with Allied. As is pointed out by the Trustee, the construction of the Settlement Order is a legal issue.

The Trustee seeks only partial summary judgment at this point with respect to the following:

(a) Claim No. 21 of Jeremy and Justin Steele for subrogation in the amount of $617,000—the Trustee seeks to have the claim disallowed in full or alternatively denied as a secured claim and a determination made that neither Jeremy nor Justin Steele has any interest in the $617,000 account or any specific property of the Debtor;

(b) Claim No. 23—the Trustee seeks to have the claim disallowed in its requested secured amount of $65,034.26, but does not seek any relief with respect to the portion of Claim No. 23 arising from Jerry Steele's guaranty of the Debtor's obligation to BB & T;

(c) Claim No. 24—the Trustee seeks to disallow the requested secured amount of $681,568.45 asserted by Justin Steele; the Trustee does not seek to disallow the portion of Claim No. 24 arising from Justin Steele's guaranties of the claims of BB & T; and

(d) Claim No. 25—the Trustee seeks to disallow the requested secured amount of $681,568.45 asserted by Jeremy Steele; the Trustee does not seek to disallow the portion of Claim No. 25 arising from Jeremy Steele's guaranties of the claims of BB & T.

*Subrogation*

Claim No. 21 of Jeremy and Justin Steele states that the claim is made in their capacity as subrogees of Allied arising from certain guaranties which they signed of the Debtor's debt to Allied. The Trustee seeks full summary judgment as to this claim on the basis that both Jeremy and Justin Steele waived any claims for subrogation or otherwise that they may have against the Debtor. The Guaranty at issue is attached to Claim No. 21 and states in paragraph 3 that the guaranty is to be "governed by and construed and enforced in accordance with the laws of the State of Georgia." Contained in the Guaranty, at paragraph 2, labeled "Consent and Waiver", is the following:

The undersigned agrees that he shall have no right of subrogation, reimbursement or indemnity whatsoever and no 'claim' against Borrower in any proceeding under Title 11 of the United States Code, as amended (the 'Bankruptcy Code') and no right of recourse to or with respect to any assets or property of Borrower or to any collateral for the Obligations, even upon payment in full of the Obligations.

Borrower is further defined in the Guaranty as Buckhead Oil Company, Inc., the Debtor in this case.

■ Georgia courts have consistently enforced waivers contained in guaranties, holding that parties have the right to freely enter into contracts, including waivers. In the case of *Brookside Communities, LLC v. Lake Dow North Corp.*, 268 Ga. App. 785, 603 S.E.2d 31 (2004), Brookside Communities, LLC borrowed money from

a bank and Lake Dow North guaranteed the loan. When Brookside defaulted, Lake Dow North paid the bank and then sued Brookside, seeking to recover the amount which the guarantor had paid on the guaranty. However, as in this case, the guaranty included a waiver of "all present and future claims, rights and remedies against borrower or any other obligated party arising out of the creation or my performance of this guaranty ...". The court held, "the language employed by the parties in the guaranty is plain, unambiguous, and capable of only one reasonable interpretation." Thus, the court held that the written waiver in the guaranty was sufficient to preclude any claim against the original borrower arising from the performance of the guaranty. *See also Builders Development Corp. v. Hughes Supply, Inc.*, 242 Ga.App. 244, 529 S.E.2d 388 (2000) (guarantor protections can be waived by the guarantor's consent which can be given in advance, even at the time the guaranty is signed). Thus, under Georgia law, the waivers contained in the guaranty are enforceable against the guarantor.

While neither party specifically stated the genesis of such waivers, the Court is aware on many occasions such waivers are included by lenders as a result of the Seventh Circuit's decision in *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186 (7th Cir.1989) (commonly referred to as the *Deprizio* case). In *Deprizio*, the court held that a debtor's payment on an antecedent debt to a non-insider creditor which benefits an insider guarantor by relieving him of his contingent liability is subject to the one-year preference period of 11 U.S.C. § 547(b)(4)(B). Numerous courts, including the Eleventh Circuit, adopted the *Deprizio* ruling before Congress, in a series of amendments, mooted the ruling. Nevertheless, in the interim, waivers such as that included in the Guaranty were used

by guarantors in defense of preference actions. In such cases, the guarantors alleged that, because they had waived all claims against the debtor, they could not be a creditor and, therefore, could not be subjected to preference liability. Courts have considered whether such waivers are enforceable in the context of Section 547.

Courts tend to fall into two camps. One group holds that such waivers are enforceable as a matter of contract law. *See O'Neil v. Orix Credit Alliance, Inc. (In re Northeastern Contracting Co.)*, 187 B.R. 420 (Bankr.D.Conn.1995); *Hostmann v. First Interstate Bank of Oregon, N.A. (In re XTI Xonix Technologies, Inc.)*, 156 B.R. 821 (Bankr.D.Ore.1993); *Hendon v. Associates Commercial Corp. (In re Fastrans, Inc.)*, 142 B.R. 241 (Bankr.E.D.Tenn.1992). Other courts hold that such waivers are not enforceable. These decisions are not based on contract law, but rather on the policy that parties should not be allowed to contract around specific bankruptcy provisions. *See Miller v. Greystone Bus. Credit II, LLC (In re USA Detergents, Inc.)*, 418 B.R. 533 (Bankr.D.Del.2009); *Russell v. Jones (In re Pro Page Partners, LLC)*, 292 B.R. 622 (Bankr.E.D.Tenn.2003); *Telesphere Liquidating Trust v. Galesi (In re Telesphere Communications, Inc.)*, 229 B.R. 173 (Bankr.N.D.Ill.1999). However, none of these cases hold that the waivers are invalid under state law or as a matter of contract right.

Given that such waivers have been enforced by the Georgia courts (*see Lake Dow North*) and this Court's belief that the decisions of *Fastrans*, XTI and *Northeastern* are the better decisions, the Court concludes that the waiver contained in the Guaranty is enforceable. The Court notes further that, although the Defendants oppose the enforcement of the waivers, they did not address the Trustee's assertion

that such waivers are enforceable under Georgia law.

▌ Even if the waivers are enforceable, however, such waivers are to be strictly construed. *See AAF–McQuay v. Willis,* 2011 WL 753858, at *10 (2011); *Fielbon Dev. Co., LLC v. Colony Bank of Houston Cnty.,* 290 Ga.App. 847, 852, 660 S.E.2d 801 (2008). The courts examine closely the language in the guaranty to ascertain whether any claims, either legal or equitable, may survive the waiver. In this case, the language in the Guaranty is clear and unambiguous. Jeremy and Justin Steele agreed they had no right of subrogation and no "claim" against the "Borrower in any proceeding under Title 11 of the United States Code, as amended (the 'Bankruptcy Code') and no right of recourse to or with respect to any assets or property of Borrower or to any collateral for the Obligations." The definition of "claim" in the Bankruptcy Code is very broad. 11 U.S.C. § 101 defines claim as a "right to payment" or a "right to an equitable remedy". Given that the Defendants specifically waived their right to subrogation and to have a claim in a bankruptcy case, there can be no doubt that any and all claims in the bankruptcy case, including this claim for subrogation, have in fact been waived. Moreover, the Guaranty waives any right to recourse to any asset or property of the Debtor. Consequently, the Trustee's request for clarification that Justin and Jeremy Steele have no claim to the $617,000 account or any other property of the Debtor is granted.

Claims numbered 23, 24 and 25 do not specifically use the term "subrogation" in the claims, but all seek to assert a claim arising out of the Defendants' payment on their guaranties to Allied. For the reasons stated above, the waiver in each guaranty waives the right of Jerry Steele, Justin Steele and Jeremy Steele to assert a claim for any amount arising out of or related to their guaranties of the Debtor's debt to Allied.

The Trustee does not seek summary judgment at this point on any claim which any of the Defendants make related to payments as a result of a guaranty of BB & T's loans. This is appropriate, as the courts which have enforced *Deprizio*-type waivers have held that the waiver is only for claims related to the guaranty in which the waiver is stated. *See Southmark Corp. v. Southmark Personal Storage, Inc. (In re Southmark),* 993 F.2d 117 (5th Cir. 1993); *Brandt v. Am. Nat'l Bank and Trust Co. of Chicago (In re Foos),* 188 B.R. 239 (Bankr.N.D.Ill.1995). Consequently, for clarification purposes, this Order is not a ruling as to any claim asserted in Claim Nos. 23, 24 and 25 for amounts paid as a result of the BB & T guaranties.

*Third–Party Beneficiary*

▌ Defendants claim that the Guaranty is not enforceable by the Trustee because the Trustee is not a third-party beneficiary of the Guaranty. Under Georgia law, one must be a party to a contract in order to enforce its provisions. *Ponder v. CACV of Colorado, LLC,* 289 Ga.App. 858, 658 S.E.2d 469 (2008). However, a third party may enforce the provisions of a contract if the third-party was a beneficiary of the contract. O.C.G.A. § 9–2–20(b). In order to prevail as a third-party beneficiary, the contract must be clear on its face that both parties intended the third party as a beneficiary. *Vaughn, Coltrane & Associates v. VanHorn Construction, Inc.* 254 Ga.App. 693, 694, 563 S.E.2d 548 (2002). The Georgia Court of Appeals has explained that "the intention of the parties to a contract is ascertained 'from the entire contract, considering each provision in connection with the others, and not giving the contract a construction which entirely neutralizes one provision if it is susceptible

of another which gives effect to all of its provisions.'" *Id.* at 695, 563 S.E.2d 548. Thus, it is not a factual question as to whether the Debtor is a third-party beneficiary of the guaranties, but rather a legal one. Further, the Court of Appeals in *Tom Brown Contracting, Inc. v. Fishman,* 289 Ga.App. 601, 658 S.E.2d 140 (2008) held that a third-party beneficiary contract "is one in which the promisor engages to the promisee to render some performance to a third person."

█ In this case, the Guaranty identifies the Debtor as the beneficiary of the waiver provision. Not only was the Debtor the beneficiary of the guaranty by having received the benefit of the loan from Allied, the Debtor is the identified beneficiary of the waiver of claims. The waiver states that the guarantors will have "no claim against the Borrower" which is defined as the Debtor. Moreover, the waiver is specific that there will be no claim in a bankruptcy case of the Debtor. Again, a very specific identification, not only of the party to be benefited, but the circumstances under which the party is to be benefited. In short, as the *Tom Brown* case said, there is a promise by the guarantor to Allied to render performance to a non-party, in this case the Debtor. The performance in this case was the waiver of claims in the Borrower's bankruptcy case. The Court notes further that there are no provisions in the Guaranty which prohibit third-party beneficiaries to the contract.

Finally, the Court notes that a similar issue was raised before the Georgia Court of Appeals in the *Lake Dow North Corporation* case. The guarantors argued that the borrower was not a party to the contract. The court held, however, "[b]ecause the 'borrower' is specifically included in the waiver, and the guaranty was executed to assist Brookside [Borrower] in obtaining the loan, we find no support for their argument that Brookside was not a party to the guaranty." 268 Ga.App. at 786, 603 S.E.2d 31. Thus, the court allowed Brookside, the borrower, to enforce the waiver by the guarantor. This Court holds similarly that Buckhead Oil Company was and is entitled to enforce the waiver contained in the guaranty as a third-party beneficiary. There is no real contest that the Trustee, as the Trustee for the estate of Buckhead Oil Company, is entitled to assert the rights of Buckhead Oil. 11 U.S.C. § 323. The Trustee is therefore a third-party beneficiary entitled to assert the waiver.

*Effect of Settlement Order*

█ Next, the Defendants argue that the Guaranty was extinguished by virtue of the Settlement Agreement between Allied and the Trustee. The Defendants seem to be arguing that, because claims were released, the entire Guaranty was somehow extinguished. However, a release of claims is not equivalent to extinguishing a document as if it never existed. Rather, a release is simply a discharge of a claim, right or privilege by one party against another.

Moreover, the terms of the Settlement Order could not be clearer that the rights of the parties with respect to this specific issue were reserved. The Settlement Order recites on page 2:

> [T]he Codebtors reserve and preserve all the Codebtor Claims that they have or may have against the Debtor, the Trustee, the Suppliers or any other party.

> The Trustee disputes the validity of the Codebtor Claims on both contractual and equitable grounds. The parties hereto acknowledge and agree that this settlement and this order fully preserve the Codebtors' rights to assert the Codebtor Claims and the Trustee's defenses against those Codebtor Claims.

The paragraph of the Settlement Order dealing with releases provides for Allied to release claims against the Trustee; for the Trustee to release claims against Allied; for the Defendants to release Allied; and for Allied to release the Defendants "from all claims, suits and causes of action whatsoever, including but not limited to, all claims, suits and causes of action relating to Buckhead Oil's obligations to Allied and the guaranties." There is no release by the Trustee of any claims or rights or defenses with respect to the Defendants. For further clarification, paragraph 6 of the Settlement Order states:

This order does not adjudicate, release or modify either (i) any claims or defenses the Trustee may have against any or all of the Codebtors; or (ii) any claims or defenses that any Codebtors may have against the Trustee or the estate, including the Codebtor Claims.

This order and the Allied Settlement are without prejudice to the following: (i) the right of any nondebtor, including any Codebtor, to pursue the Codebtor Claims; or (ii) the Trustee's defenses against anyone's assertion of the Codebtor Claims or any other rights against the Estate.

Finally, the Court notes that the Guaranties signed by Defendants further allowed Allied to settle claims related to the bankruptcy of the Borrower. The Guaranties state:

The undersigned, without affecting his liability hereunder, consents to and waives notice of . . . release of the whole or any part of the Obligations, renewal, indulgence, settlement, compromise . . . acceptance or release of security . . . release of any other person directly or indirectly liable for any of the obligations or any collateral security given by Borrower. . . . The undersigned also consents to and waives notice of any

arrangements or settlements made in or out of court in the event of . . . any proceeding under the Bankruptcy Code . . . and anything whatever whether or not herein specified which may be done or waived by and between Lender and Borrower . . .

¶ 2. Thus, the Trustee's assertion of Defendants' waiver of claims was not affected in any way by the settlement by the Trustee.

The last objection which the Defendants raise to the Motion for Partial Summary Judgment is that they should, at a minimum, retain the right to assert their claims defensively. The Trustee has clarified in her reply that the Trustee is not seeking a ruling with respect to that issue, and it will be reserved for a later date.

### CONCLUSION

The Trustee's Motion for Partial Summary Judgment is GRANTED. Claim No. 21 is disallowed in total; the portion of Claim No. 23 seeking $65,034.26 is disallowed in total; the portion of Claim No. 24 seeking $681,568.45 is disallowed in total; and the portion of Claim No. 25 seeking $681,568.45 is disallowed in total.

The Court hereby directs the entry of a final judgment as to the disallowance of claims determined herein, and hereby expressly determines that there is no just reason for delay in that entry, as set forth in Fed. R. Bankr.P. 7054(b).