**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 7, 2014**

# In the Court of Appeals of Georgia

 A13A2372. THOMAS v. CHANCE.

BOGGS, Judge.

Freida Thomas appeals from the trial court's grant of summary judgment to her brother, Donald Chance, on her complaint for repayment of loans totaling $132,700. In her appeal, Thomas asserts that the trial court erred by granting summary judgment in favor of Chance. For the reasons explained below, we agree and reverse.

"We review the grant or denial of a motion for summary judgment de novo, and we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Woodcraft by MacDonald, Inc. v. Ga. Cas. & Sur. Co.*, 293 Ga. 9, 10 (743 SE2d 373) (2013). So viewed, the record shows that Thomas was the president and 90% owner of Formaboard, Inc., which employed her three siblings: Donald Chance, Andy

Chance, and Joan Hayes. In June of 1998, Formaboard, Inc. was sold in a stock purchase agreement for a confidential amount, and its operations were later moved from Georgia to South Carolina. Shortly before the sale of the business in 1998, Thomas met with her siblings, told them she had decided to sell the business, and offered to lend them money "to help each of them with their financial needs during the transition." According to Thomas' interrogatory responses, she "further stated that if and when her own financial need arose, she would give them notice to repay the loans." In her deposition, she admitted that she did not recall whether Donald Chance expressly stated that he would repay the loans, explaining "[t]here was no disagreement[]."

Between June of 1998 and October of 2000, Thomas provided money to Donald Chance by writing checks to him or his immediate family members, giving him cash, or making payments directly to merchants on his behalf. Thomas testified that in 2007 she verbally asked Donald Chance to start making payments on the loans. In June or July of 2009, she informed Donald Chance that she needed repayment of $100,000. According to Thomas, Donald Chance told her "he was unable to pay it all at once, but said he would get back to [her] to discuss the amount he could start

paying." After Donald Chance failed to get back with Thomas, she filed suit against him.

Andy Chance testified that Thomas made an oral agreement to loan him a total of $107,035. and that he repaid this money over a six-year period of time. He testified that he was present at meetings with Donald Chance, Joan Hayes, and Thomas shortly before the sale of Formaboard in which Thomas stated she would loan her three siblings money after the sale.

Joan Hayes testified that she also received loans totaling $135,000 from Thomas and that she repaid the money over time. As with her brother Andy, Hayes did not have a written loan agreement. She testified with regard to the loans that "we were told that - - there might come a time that the need would be there for the money, and we could expect to have to pay that back."

Donald Chance testified that funds he received from Thomas' personal bank account over a two-year period of time after the sale of Formaboard were profit-sharing payments based upon his employment with Formaboard, even though he was working for Formaboard's successor at the time he received these checks. He denied that Thomas loaned him any money or asked him to repay any loans.

The trial court granted summary judgment in favor of Donald Chance based upon its conclusion that the alleged verbal loan agreement was unenforceable because it did not specify an interest rate and a maturity date. It also concluded that there was "no verbal agreement sufficiently clear to be capable of enforcement."

On appeal, Thomas correctly asserts that the lack of an interest rate and maturity date is not fatal to her claim. "If no time is specified for performance, performance is due immediately or within a reasonable time after the contract is made. What is a reasonable time is for the jury." *Parker v. Futures Unlimited*, 157 Ga. App. 520, 520-521 (278 SE2d 99) (1981) (conflicting evidence authorized trier of fact to find that "money advanced to appellant by the appellee was a loan to be repaid and not compensation for employment"). And parties to a contract may contemplate a loan which is payable on demand at some indefinite time in the future. See *Scarboro v. Ralston Purina Co.*, 160 Ga. App. 576, 578 (287 SE2d 623) (1981).

The cases relied upon by the trial court to require a specified interest rate as a condition for enforcement of the loan are distinguishable, because each of these cases involve an alleged breach of a promise to loan and disburse funds by a commercial banking institution, not the breach of an agreement to repay a personal loan already disbursed to a family member. See *Dolanson Co. v. C. & S. Nat. Bank*, 242 Ga. 681

4

(251 SE2d 274) (1978) (purchase-money borrower sued bank for breaching alleged promise to provide additional construction financing for property); *Wachovia Bank of Georgia v. Mothershed*, 210 Ga. App. 853 (437 SE2d 852) (1993) (granting summary judgment to bank for breach of alleged oral contract to make additional future loans). In this case, genuine issues of material fact exist as to whether the money provided by Thomas to Donald Chance were loans payable on demand as claimed by Thomas, or profit-sharing payments as asserted by Chance.

Chance's failure to verbally respond when Thomas stated she would lend money to each of her siblings after the sale of Formaboard does not entitle him to summary judgment in his favor as a matter of law. "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." OCGA § 13-3-1.

> In determining whether there was a mutual assent, courts apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable man in the position of the other contracting party would ascribe to the first party's manifestations of assent, or that meaning which the other contracting party knew the first party ascribed to his manifestations of assent. Further, in cases such as this one, the circumstances surrounding the making of the contract, such as

5

correspondence and discussions, are relevant in deciding if there was a mutual assent to an agreement. Where such extrinsic evidence exists and is disputed, the question of whether a party has assented to the contract is generally a matter for the jury.

(Citations omitted.) *Turner Broadcasting System v. McDavid*, 303 Ga. App. 593, 597 (1) (693 SE2d 873) (2010). And "assent may be implied from the circumstances," *Redmond & Co. v. Atlanta & Birmingham Air-Line R.*, 129 Ga. 133, 142-143 (58 SE 874) (1907), and the conduct of the parties. *Tom Brown Contracting v. Fishman*, 289 Ga. App. 601, 603-604 (1) (658 SE2d 140) (2008). In this case, a genuine issue of material fact exists based upon Donald Chance's conduct in accepting money from Thomas that she testified was offered to him as a loan. See *Mills v. Barton*, 205 Ga. App. 413, 414-415 (3) (422 SE2d 269) (1992) (affirming judgment for amount owed on loan where evidence showed that "defendant, through her father as her agent, accepted money from the plaintiff in exchange for understanding that she would repay the plaintiff when she was financially able"). We therefore reverse the trial court's grant of summary judgment in favor of Donald Chance.

*Judgment reversed. Doyle, P. J., and McFadden, J., concur.*